1   PENELOPE A. PREOVOLOS (CA SBN 87607)
    PPreovolos@mofo.com
2   STUART C. PLUNKETT (CA SBN 187971)
    SPlunkett@mofo.com
3   ALEXEI KLESTOFF (CA SBN 224016)
    AKlestoff@mofo.com
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California  94105-2482
    Telephone: 415.268.7000
6   Facsimile: 415.268.7522

7   Attorneys for Defendant
    APPLE INC.

8

9                 UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11                  SAN FRANCISCO DIVISION

12

13  LUXPRO CORPORATION, a Taiwanese        Case No. C 10-03058 JSW
    corporation,
14                                         **DEFENDANT APPLE INC.'S**
                    Plaintiff,             **NOTICE OF MOTION AND**
15                                         **MOTION TO DISMISS THE**
                                           **SECOND AMENDED COMPLAINT**
16        v.
                                           Date:   January 28, 2011
17  APPLE INC. f/k/a Apple Computer, Inc., Time:   9:00 a.m.
                                           Ctrm:   11
18                  Defendant.
                                           Hon. Jeffery S. White
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

NOTICE OF MOTION AND MOTION ............................................................................... v

ISSUES TO BE DECIDED .................................................................................................. vi

SUMMARY OF ARGUMENT ........................................................................................... vii

BACKGROUND .................................................................................................................. 1

ARGUMENT ....................................................................................................................... 4

I.    THE *NOERR-PENNINGTON* DOCTRINE BARS ALL CLAIMS .................................. 4

    A.    *Noerr-Pennington* Immunizes Apple Against All Claims in the SAC ................. 4

    B.    Luxpro Has No Claim Based on Communications with Nonparties ..................... 6

II.   LUXPRO'S TORTIOUS INTERFERENCE CLAIMS FAIL ............................................ 8

    A.    Luxpro's General Allegations of "Interference" Are Insufficient ......................... 8

    B.    Luxpro's Entity-Specific Allegations Are Insufficient ........................................... 8

III.  LUXPRO'S LANHAM ACT CLAIM FAILS .................................................................. 11

IV.   LUXPRO'S CLAIM UNDER THE UCL FAILS ........................................................... 13

V.    LUXPRO'S "COMMERCIAL DISPARAGEMENT" CLAIM FAILS .......................... 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ........................................................................................................ 4

*Auto-Chlor Sys. of Minn., Inc. v. JohnsonDiversey*,
328 F. Supp. 2d 980 (D. Minn. 2004) ................................................................................. 12

*Avery Dennison Corp. v. ACCO Brands, Inc.*,
No. CV 99-1877 DT (McX),
2000 U.S. Dist. LEXIS 3938 (C.D. Cal. Feb. 22, 2000) ................................................. 7, 12

*Boone v. Redevelopment Agency of San Jose*,
841 F.2d 886 (9th Cir. 1988) ............................................................................................... 5

*Brosnan v. Tradeline Solutions, Inc.*,
No. C-08-0694 JCS, 2009 U.S. Dist. LEXIS 48262 (N.D. Cal. June 5, 2009) ..................... 13

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ....................................................................................................... 13

*Chavez v. Whirlpool Corp.*,
93 Cal. App. 4th 363 (2001) ............................................................................................... 14

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
173 F.3d 725 (9th Cir. 1999) .............................................................................................. 12

*Coastal States Mktg., Inc. v. Hunt*,
694 F.2d 1358 (5th Cir. 1983) .............................................................................................. 5

*Coca-Cola Co. v. Omni Pac. Co.*,
No. C 98-0784 S1, 1998 U.S. Dist. LEXIS 23277 (N.D. Cal. Dec. 9, 1998) ..................... 6, 7

*ComputerXpress, Inc. v. Jackson*,
93 Cal. App. 4th 993 (2001) ............................................................................................... 14

*Daly v. Viacom, Inc.*,
238 F. Supp. 2d 1118 (N.D. Cal. 2002) .............................................................................. 13

*E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961) ...................................................................................................... viii, 4

*Eldorado Stone, LLC v. Renaissance Stone, Inc.*,
No. 04cv2562 JM (LSP),
2005 U.S. Dist. LEXIS 45237 (S.D. Cal. Aug. 10, 2005) ................................................... 14

*Futuristic Fences, Inc. v Illusion Fence Corp.*,
    558 F. Supp. 2d 1270 (S.D. Fla. 2008) ................................................................................ 12

*G. Fruge Junk Co. v. Oakland*,
    637 F. Supp. 422 (N.D. Cal. 1986) ..................................................................................... 14

*Gibson v. Regions Fin. Corp.*,
    No. 4:05CV01922 JLH, 2008 U.S. Dist. LEXIS 1570 (E.D. Ark. Jan. 9, 2008),
    *aff'd*, 557 F.3d 842 (8th Cir. 2009) .................................................................................... 15

*Glenn K. Jackson, Inc. v. Roe*,
    273 F.3d 1192 (9th Cir. 2001) ........................................................................................... 13

*Hi-Top Steel Corp. v. Lehrer*,
    24 Cal. App. 4th 570 (1994) ................................................................................................ 5

*ISI Int'l, Inc. v. Broden Ladner Gervais LLP*,
    316 F.3d 731 (7th Cir. 2003) ............................................................................................. 12

*Jones v. Thyssenkrup Elevator Corp.*,
    No. C-05-3539 EMC, 2006 U.S. Dist. LEXIS 13978 (N.D. Cal. Mar. 14, 2006) ................. 14

*Kearns v. Ford Motors Co.*,
    567 F.3d 1120 (9th Cir. 2009) ........................................................................................... 14

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ..................................................................................................... 10

*Lane v. Celadon Trucking, Inc.*,
    543 F.3d 1005 (8th Cir. 2008) ............................................................................................. 9

*Luxpro Corp. v. Apple Inc.*,
    658 F. Supp. 2d 921 (W.D. Ark. 2009) ......................................................................... *passim*

*M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*,
    No. 97-1568-(JAG), 2007 U.S. Dist. LEXIS 23636 (D.N.J. Mar. 30, 2007) ........................ 12

*Matsushita Elecs. Corp. v. Loral Corp.*,
    974 F. Supp. 345 (S.D.N.Y. 1997) ....................................................................................... 7

*Melea Ltd. v. Quality Models, Ltd.*,
    345 F. Supp. 2d 743 (E.D. Mich. 2004) ........................................................................... 5, 7

*Omni Res. Dev. Corp. v. Conoco, Inc.*,
    739 F.2d 1412 (9th Cir. 1984) ............................................................................................. 6

*Or. Natural Res. Council v. Mohla*,
    944 F.2d 531 (9th Cir. 1991) ............................................................................................... 4

*Porous Media Corp. v. Pall Corp.*,
    201 F.3d 1058 (8th Cir. 2000) ................................................................................. 12

*Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guar. Ass'n*,
    136 Cal. App. 4th 464 (2006) .................................................................................... 5

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) ................................................................................................. 5, 6

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,
    983 F. Supp. 1303 (N.D. Cal. 1997) ........................................................................ 14

*Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Ltd.*,
    No. 02-12102-RWZ, 2006 U.S. Dist. LEXIS 43690 (D. Mass. June 28, 2006) ....................... 7

*Sugar Busters, LLC v. Brennan*,
    No. 98-1562 S3, 1999 U.S. Dist. LEXIS 2289 (E.D. La. Feb. 19, 1999) ................................ 6

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008) ........................................................................... 12, 13

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
    546 F.3d 991 (9th Cir. 2008) ....................................................................... viii, 6, 7

*U.S. Philips Corp. v. Princo Corp.*,
    No. 02 Civ. 246 (CLB), 2005 U.S. Dist. LEXIS 6820 (S.D.N.Y. Jan. 24, 2005) ..................... 7

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ................................................................................. 13

*Webb v. Olive Garden Italian Rests.*,
    No. C 08-04913 PVT, 2009 U.S. Dist. LEXIS 107774 (N.D. Cal. Oct. 29, 2009) ............... 14

*White Mule Co. v. ATC Leasing Co. LLC*,
    540 F. Supp. 2d 869 (N.D. Ohio 2008) .................................................................. 12


**STATUTES**

15 U.S.C. § 1125(a)(1)(B) ................................................................................. 11

Ark. Code Ann. § 16-56-104 ........................................................................... 15

Cal. Civ. Code § 45 ........................................................................................... 15

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 28, 2011, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 11 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, before the Honorable Jeffrey S. White, Apple Inc. ("Apple") shall and hereby does move to dismiss the Second Amended Complaint ("SAC") filed by Luxpro Corporation ("Luxpro") in this action.

Apple seeks dismissal of the SAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  This Motion is based on this Notice of Motion and Motion and supporting Memorandum of Points and Authorities, the Request for Judicial Notice, the declarations of Thomas R. La Perle, Michael Hofhine, and Meihua Shi, filed concurrently herewith, the pleadings, records and files in this action, and such other written or oral arguments as may be presented at or before the time this Motion is taken under submission by the Court.

1

## ISSUES TO BE DECIDED
### (Local Rule 7-4(a)(3))

2

3       1.      Are Luxpro's claims, which are premised on Apple's enforcement of its

4   intellectual property rights, barred by the *Noerr-Pennington* doctrine?

5       2.      Are Luxpro's claims for tortious interference with prospective economic

6   advantage and with contract barred for the additional reason that Luxpro fails to plead essential

7   elements of these claims?

8       3.      Is Luxpro's claim for false advertising under the Lanham Act barred for the

9   additional reason that Luxpro fails to plead "commercial advertising or promotion" by Apple

10  within the meaning of the Act?

11      4.      Is Luxpro's claim under California's Unfair Competition Law barred for the

12  additional reason that Luxpro fails to allege unlawful, unfair, or fraudulent conduct within the

13  meaning of the statute?

14      5.      Is Luxpro's claim for "commercial disparagement" barred for the additional reason

15  that Luxpro fails adequately to plead a defamatory statement by Apple or special damages?

16

17

18

19

20

21

22

23

24

25

26

27

28

**SUMMARY OF ARGUMENT**

Luxpro is a Taiwanese company that manufactured and sold unauthorized copies of Apple's uniquely designed iPod shuffle products. When Apple first became aware of Luxpro's unlawful activities in 2005, it sought and obtained injunctive relief against Luxpro in courts in Germany and Taiwan. Apple allegedly also contacted companies selling or attempting to sell Luxpro's iPod copies, informing them that they were infringing Apple's intellectual property. Luxpro's claims are premised entirely on these legitimate attempts to stop Luxpro and others from infringing Apple's intellectual property rights.

Before this case was transferred, the Western District of Arkansas (referred to herein as the "District Court"), dismissed with prejudice Luxpro's common-law monopolization claim and claims based on Apple's litigation, and dismissed the remainder of the First Amended Complaint ("FAC") without prejudice on several other grounds. *Luxpro Corp. v. Apple Inc.*, 658 F. Supp. 2d 921 (W.D. Ark. 2009). As to those areas where the Court granted leave to amend, Luxpro's amendments do nothing to cure those defects. To the contrary, the SAC, even more clearly than the FAC, conclusively establishes that the foundation of Luxpro's claims is Apple's enforcement of its intellectual property rights. Indeed, the SAC expressly alleges that Luxpro's purported damages flow from the injunctions Apple obtained against it, which the District Court has already held were protected by the *Noerr-Pennington* doctrine. *Id.* at 927 (citing *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965); *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961)).

Apple's alleged communications with Luxpro's purported customers are also protected by the doctrine, because, as a matter of law, *Noerr-Pennington* bars any claims based on communications to third parties that are related to the German and Taiwanese litigation that serve as the basis for *Noerr-Pennington* immunity. *See, e.g.*, *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007-08 (9th Cir. 2008). Thus, all of Luxpro's claims fall within the *Noerr-Pennington* doctrine and the SAC should thus be dismissed in its entirety.

Luxpro's claims fail for additional reasons, discussed below. The Court should, however, dismiss the SAC under *Noerr-Pennington* without reaching these alternative grounds.

1

**BACKGROUND**

2

Luxpro began selling digital music devices in 2004, and launched its "Tangent" line of

3

devices in April 2005.  (SAC ¶¶ 1, 28)  Apple, a California corporation, has distributed and sold

4

digital music players throughout the world since 2001 under the brand name iPod.  (SAC ¶ 2)

5

Apple introduced the first generation iPod shuffle in January 2005.

6

Luxpro alleges that Apple damaged Luxpro's business and interfered with its business

7

relations.  (SAC ¶ 6)  Specifically, Luxpro alleges that Apple initiated "sham litigation" against

8

Luxpro in Germany and Taiwan regarding the similarity of its devices to Apple's iPod products,

9

and that Apple attempted to protect its intellectual property rights with respect to entities doing

10

business with Luxpro.  (SAC ¶¶ 37-60)  The German litigation arose out of Luxpro's February

11

2005 trial run of its "Super Shuffle" device at a tradeshow in Germany.  (SAC ¶ 37; *see also*

12

Declaration of Thomas R. La Perle ("La Perle Decl.") Ex. 1 (showing photo of first generation

13

Apple iPod shuffle and the "Super Shuffle"))  In light of the obvious similarity to the iPod, Apple

14

applied for and obtained an injunction from a German court.  (SAC ¶ 37; *see also* La Perle Decl.

15

Exs. 2-3; Declaration of Michael Hofhine, Ex. A)[1]

16

Apple then sent cease and desist letters to Luxpro in April 2005 regarding Luxpro's Super

17

Tangent, Top Tangent, and EZ Tangent devices.  (SAC ¶ 38; *see also* SAC ¶ 37 (Super Tangent

18

is the product formerly called Super Shuffle but renamed following the German injunction.))

19

When Luxpro failed to comply, Apple sued Luxpro in Taiwan, "alleging that the appearance" of

20

Luxpro's three products "closely resembled the appearance of the iPod shuffle."  (SAC ¶ 39)

21

Apple won a preliminary injunction prohibiting Luxpro from selling any of the devices.  (SAC

22

¶ 39; La Perle Decl. Exs. 4-5; Declaration of Meihua Shi ("Shi Decl."), Ex. A)  The injunction

23

was partially lifted on appeal in November 2005.  (SAC ¶ 41)  The litigation concluded in July

24

2009 when the Taiwan Supreme Court affirmed the injunctive relief with respect to the "Super

25

26

_____

27

[1] The exhibits to the La Perle declaration may be judicially noticed for the reasons stated in Apple's concurrently filed Request for Judicial Notice.

28

1   Tangent" and affirmed the lifting of injunctive relief for the other products.  (La Perle Decl.

2   Ex. 6; Shih Decl. Ex. B)

3         Luxpro also alleges that Apple sent communications to companies selling Luxpro's

4   products, warning that Apple would file the same types of suit against those companies as it did

5   against Luxpro.  (SAC ¶ 40)  For each entity, Luxpro fails to plead facts necessary to its claims:

6         <u>Distributors</u>.  Luxpro identifies distributorship agreements with 11 companies, but alleges

7   only that the agreements were terminated due to the Taiwanese injunction.  (SAC ¶¶ 30, 41, 49)

8         <u>Companies Allegedly Placing "Direct Orders."</u>  Luxpro alleges that it received "direct

9   orders" for devices from 11 companies, two of which Apple allegedly "threatened" with litigation

10  (Orchard and Kaga).  (SAC ¶¶ 33, 52)[2]  But these same allegations were dismissed without

11  prejudice, *Luxpro*, 658 F. Supp. 2d at 932-33, and the SAC's allegations have not materially

12  changed.

13        <u>Companies Allegedly Requesting Samples</u>.  Luxpro alleges that it "received requests for

14  samples from over 1,000 other companies."  (SAC ¶ 54)  But the SAC alleges neither a business

15  relationship with these entities nor any probability of future economic benefit.

16        <u>Other Retailers and Distributors</u>.  Luxpro contends that Apple "threatened" a "number of

17  retailers and distributors (*e.g.*, Fatech Co., Carrefour, Dai-ichi Denki, TKEC 3C, ET-Mall TV

18  Shopping)" because Luxpro had illegally copied Apple's products.  (SAC ¶¶ 56, 57)  With

19  respect to Fatech, Dai-ichi Denki, TKEC 3C, and ET-Mall TV Shopping, the SAC provides no

20  further detail than in the FAC.  For Carrefour, the SAC alleges that Apple's "threats and

21  intimidation" caused Carrefour "not to sell any of Luxpro's future products."  (SAC ¶ 57)  The

22  District Court previously dismissed all claims relating to Carrefour, 3C, and ET-Mall without

23  prejudice, *Luxpro*, 658 F. Supp. 2d at 932, and the SAC's allegations have not materially

24  changed.

---

[2] The SAC also alleges that it received orders from "over 23" retailers in Europe and "over a dozen retailers" in North America, but none is identified by name.  (SAC ¶ 33)

1   InterTAN.  Luxpro alleges that InterTAN, a Canadian retailer, "became interested" in

2 Luxpro products at a trade show in 2005 and that in August 2005 Luxpro shipped 7,000 MP3

3 devices to InterTAN for a "two-week trial" in retail stores.  (SAC ¶ 31)  Luxpro alleges that at

4 some later date Apple "placed significant pressure" on InterTAN to drop Luxpro's products and

5 that InterTAN destroyed 4,500 of Luxpro's devices.  (SAC ¶ 48)  The SAC is clear that the

6 "pressure" Apple allegedly placed on InterTAN consisted of Apple attempting to enforce its

7 intellectual property rights.  The same allegations regarding InterTAN appeared in the FAC, and

8 the District Court did not specifically address InterTAN in the dismissal order.

9   WebWorker.  As it did in the FAC, Luxpro alleges that WebWorker "ended" its business

10 relationship with Luxpro based on Apple's litigation threats.  (SAC ¶ 52)  The Court previously

11 dismissed all claims relating to WebWorker without prejudice.  *Luxpro*, 658 F. Supp. 2d at 932.

12 The SAC's allegations are not materially different.

13   Elecom, Co. Ltd.  Luxpro alleges that Elecom "express[ed] interest" in its products, but

14 because of the lawsuit with Apple, it "could not do business with Luxpro."  (SAC ¶ 53)  The SAC

15 does not allege that Apple had any contact with Elecom, or that there was any probability that

16 Elecom would do business with Luxpro.

17   Starbucks Japan.  Luxpro alleges that Starbucks Japan "had agreed to a trial marketing

18 campaign" involving Luxpro products and that Luxpro "was on the verge of implementation of

19 this joint venture prior to the interference and unfair trade practices of Apple."  (SAC ¶ 54)  The

20 Court previously sustained Luxpro's allegations regarding Starbucks Japan, *Luxpro*, 658 F. Supp.

21 2d at 931-32, and the SAC is even weaker, because Luxpro now omits any allegation that Apple

22 communicated with Starbucks Japan.  (*See* SAC ¶ 54)

23   Japan Airlines.  Luxpro alleges that "[i]nterest was expressed by Japan Airlines" in

24 Luxpro's products, and that "the deal was cancelled due to Apple's illegal conduct and pattern of

25 sham litigation."  (SAC ¶ 55)  The SAC fails to allege any contact with Japan Airlines by Apple,

26 or any probability of future economic benefit beyond the Airline's alleged "interest."

27

28

1    <u>Bruder Products, Ltd.</u>  Luxpro alleges Bruder was "intimidated and threatened by Apple

2  because it was doing business with Luxpro."  (SAC ¶ 57)  The SAC fails to allege any contact by

3  Apple, or any probability Luxpro had of some future economic benefit with Bruder.

4    <u>Nikko VC.</u>  Luxpro claims it was "receiving interest from venture capital firms,"

5  including Nikko VC.  (SAC ¶ 58)  Luxpro claims that "[d]ue to Apple's pattern of sham litigation

6  and other illegal tactics, however, Nikko VC decided later to not invest with Luxpro."  (SAC

7  ¶ 58)  The SAC does not allege the Apple had any direct contact with Nikko VC.

8    <u>Gre-Tai Securities Market.</u>  Luxpro alleges that it attempted to list its stock on the Gre-Tai

9  Securities Market, and that Apple's litigation forced Luxpro to abandon these efforts.  (SAC

10  ¶¶ 35, 44)

11    The SAC asserts five causes of action:  tortious interference with prospective economic

12  advantage, tortious interference with contract, violation of Section 1125(a) of the Lanham Act,

13  violation of the UCL, and "commercial disparagement."  (SAC ¶¶ 64-90)

14                                    **ARGUMENT**

15    The Court should dismiss the complaint if plaintiff is unable to articulate enough facts to

16  "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949

17  (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Claims that implicate

18  *Noerr-Pennington* are subject to a heightened pleading standard.  *Or. Natural Res. Council v.*

19  *Mohla*, 944 F.2d 531, 533 (9th Cir. 1991) (conclusory allegations insufficient to "strip a

20  defendant's activities of *Noerr-Pennington* protection"; complaint must allege "specific activities

21  which bring the defendant's conduct" into exception to doctrine).

22    **I.    THE *NOERR-PENNINGTON* DOCTRINE BARS ALL CLAIMS**

23        **A.    *Noerr-Pennington* Immunizes Apple Against All Claims in the SAC**

24    *Noerr-Pennington* provides immunity against a claim based on a party's attempt to

25  petition a court to enforce rights.  *Luxpro*, 658 F. Supp. 2d at 927 (citing *United Mine Workers*,

26  381 U.S. at 657; *E. R.R. Presidents Conference*, 365 U.S. at 127).  The District Court previously

27  held that Luxpro's claims related to the German and Taiwanese litigation were barred by *Noerr-*

28

1   *Pennington.  See Luxpro*, 658 F. Supp. 2d at 927-29.  The District Court correctly held that the

2   doctrine applied to all causes of action, and applied even though the litigation was in a foreign

3   country.  *Id.*; *see also Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1366-68 (5th Cir. 1983)

4   (doctrine applies to petitioning activity in foreign country); *Melea Ltd. v. Quality Models, Ltd.*,

5   345 F. Supp. 2d 743, 760 (E.D. Mich. 2004) (doctrine applied to Lanham Act claim); *Premier*

6   *Med. Mgmt. Sys., Inc. v. Cal. Ins. Guar. Ass'n*, 136 Cal. App. 4th 464, 470-71, 478 (2006)

7   (doctrine applied to antitrust claim, Section 17200 claim, and tort claim); *Hi-Top Steel Corp. v.*

8   *Lehrer*, 24 Cal. App. 4th 570, 577-78 (1994) (*Noerr-Pennington* applies "regardless of the

9   underlying cause of action").

10          The SAC offers no basis for revisiting the District Court's holding.  Instead, the SAC—

11   even more clearly than the FAC—establishes that Luxpro bases its claims solely on the litigation.

12   Luxpro explicitly alleges that its supposed harm resulted from the injunctive relief Apple obtained

13   in Taiwan.  (*See* SAC ¶ 41 ("*[T]he time that it took to [partially] reverse [the Taiwanese*

14   *injunction ruling] was time lost for Luxpro . . . .  During this interim*, Luxpro had been forced to

15   stop all production, manufacturing, advertising and marketing of its popular Tangent MP3 players

16   and, ultimately, lost its distribution agreements . . . ." (emphasis added)); *see also* SAC ¶¶ 43, 44,

17   62 (alleging, inter alia, harm based on "time it took to [partially] overturn the injunction"))

18   Luxpro's strategy of piling on pages of allegations in the SAC about Apple's "scheme" to drive

19   Luxpro from the market does not change the fact that these allegations relate solely to Apple's

20   litigation and thus fall squarely within *Noerr-Pennington*.

21          Luxpro could only avoid dismissal by establishing the applicability of the sham litigation

22   exception to *Noerr-Pennington.  See Boone v. Redevelopment Agency of San Jose*, 841 F.2d 886,

23   894 (9th Cir. 1988).  But the District Court has already held, correctly, that Luxpro fails to

24   demonstrate the litigation was a sham.  *Luxpro*, 658 F. Supp. 2d at 927-28.  Nothing in the SAC

25   can or should alter that holding.  A party's success in litigation conclusively establishes that the

26   suit was not a sham.  *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S.

27   49, 61 n.5 (1993) ("A winning lawsuit is by definition a reasonable effort at petitioning for

28   redress and therefore not a 'sham.'").  Here, Apple succeeded in obtaining an injunction as to all

1   of Luxpro's products, affirmed in part on appeal, as well as the German injunction.  (SAC ¶¶ 39,

2   41; La Perle Decl. Ex. 6; Shi Decl. Ex. B)  The grant of a preliminary injunction—regardless of

3   later proceedings in the case—establishes that the litigation is not objectively baseless.  *See Omni*

4   *Res. Dev. Corp. v. Conoco, Inc.*, 739 F.2d 1412, 1414 (9th Cir. 1984); *Coca-Cola Co. v. Omni*

5   *Pac. Co.*, No. C 98-0784 S1, 1998 U.S. Dist. LEXIS 23277, at *26 n.2 (N.D. Cal. Dec. 9, 1998);

6   *Sugar Busters, LLC v. Brennan*, No. 98-1562 S3, 1999 U.S. Dist. LEXIS 2289, at *13 (E.D. La.

7   Feb. 19, 1999).  The case thus falls squarely within *Prof'l Real Estate*.

8           Because Apple's success establishes that the litigation was not objectively baseless, the

9   SAC's voluminous allegations regarding Apple's supposed intent to drive Luxpro from the

10  market (SAC ¶¶ 37-62) are irrelevant as a matter of law.  *See Prof'l Real Estate*, 508 U.S. at 57-

11  60 (if suit is not objectively baseless, subjective intent is immaterial).  Thus, *Noerr-Pennington*

12  bars the SAC in its entirety.

### B.      Luxpro Has No Claim Based on Communications with Nonparties

14          The District Court held that Luxpro could conceivably base tort claims on Luxpro's

15  allegations regarding Apple's "post-litigation" contacts with nonparties.  *Luxpro*, 658 F. Supp. 2d

16  at 927-29.  This Court should now dismiss the SAC in its entirety.  As an initial matter, Luxpro

17  does not allege any "post-litigation" contacts with customers, because the Taiwanese litigation

18  was ongoing until July 2009—long after the last alleged communication.  (La Perle Decl. Ex. 6;

19  Shih Decl. Ex. B)

20          But more fundamentally, the contacts were not "post-litigation" as to the recipients of the

21  communications.  The SAC makes clear that Apple's alleged communications were *pre-litigation*

22  demand letters.  (*See, e.g.*, SAC ¶ 7 (alleging Apple "used the litigation against Luxpro to

23  threaten Luxpro's commercial partners . . . with similar suits"); ¶ 47 (alleging Apple used

24  pendency of Taiwan litigation "as the bases for its threatening letters to Luxpro's" customers);

25  ¶ 52 (alleging Apple threatened customers with "same type of lawsuits Apple had filed against

26  Luxpro"))  Unquestionably, *Noerr-Pennington* bars all claims based on such demand letters.  *See,*

27  *e.g.*, *Theme Promotions, Inc.*, 546 F.3d at 1007-08 (*Noerr-Pennington* bars claims based on

28

letters sent to plaintiff's customers, regardless of whether defendant threatens to bring customer into ongoing litigation with plaintiff or threatens to bring new litigation against customers).

Failing to extend *Noerr-Pennington* protection to communications threatening litigation against contributory infringers (like Luxpro's customers) would severely curtail a company's ability to protect its intellectual property rights. For that reason, numerous courts are in agreement with the Ninth Circuit's decision in *Theme Promotions* that *Noerr-Pennington* bars claims based on threats of litigation made to *any* party, not just the party against whom the initial litigation was commenced. *See, e.g.*, *U.S. Philips Corp. v. Princo Corp.*, No. 02 Civ. 246 (CLB), 2005 U.S. Dist. LEXIS 6820, at *14-15 (S.D.N.Y. Jan. 24, 2005) (defendant's letters to customers informing them of lawsuit filed against plaintiff and stating that they may be infringing defendant's patents was pre-litigation communication protected by *Noerr-Pennington*); *Avery Dennison Corp. v. ACCO Brands, Inc.*, No. CV 99-1877 DT (McX), 2000 U.S. Dist. LEXIS 3938, at *67 (C.D. Cal. Feb. 22, 2000) (counterdefendant immune from liability based on letters sent to counterclaimant's customers discussing the claims in the parties' litigation); *Matsushita Elecs. Corp. v. Loral Corp.*, 974 F. Supp. 345, 359 (S.D.N.Y. 1997) (defendant immune from tort liability stemming from letters sent to nonparties threatening suit; fact that defendant did not ultimately bring suit against those nonparties was irrelevant); *Melea*, 345 F. Supp. 2d at 749, 758-59 (letters to defendant's customers threatening patent infringement suits both before and after plaintiff had filed suit against defendant were immunized by *Noerr-Pennington*); *Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Ltd.*, No. 02-12102-RWZ, 2006 U.S. Dist. LEXIS 43690, at *112-13 (D. Mass. June 28, 2006) (email to counterclaimant's customers informing them of injunction against counterclaimant and encouraging them to avoid participating in infringement to avoid liability was covered by *Noerr-Pennington*); *Coca-Cola*, 1998 U.S. Dist. LEXIS 23277, at *5, 28-29 (threats of litigation directed at counterclaimant's customers were protected).

Nor is there any basis to apply the sham litigation exception to any alleged communications with customers. The SAC makes clear that the letters about which Luxpro complains threatened the same type of litigation that the District Court has already found to be

1   covered by *Noerr-Pennington*.  (*See* SAC ¶ 7 ("Apple then used the litigation against Luxpro to

2   threaten Luxpro's commercial partners . . . with similar suits"); *see also* SAC ¶¶ 40, 47, 52, 60)

3        In sum, *Noerr-Pennington* bars all claims in the SAC.  The Court should dismiss the SAC

4   in its entirety without reaching the claim-specific defects discussed in the following sections.

5         **II.**     **LUXPRO'S TORTIOUS INTERFERENCE CLAIMS FAIL**

6            **A.**    **Luxpro's General Allegations of "Interference" Are Insufficient**

7        The SAC is littered with vague and generalized allegations about Apple's purported

8   interference with Luxpro's contracts and business relationships.  These allegations fail to plead

9   facts sufficient to satisfy the pleading requirement of *Twombly* and *Iqbal*.  Indeed, a plaintiff

10   cannot assert a tortious interference claim by pleading interference with unnamed and unknown

11   entities, under any pleading standard.  But Luxpro attempts to do just that.  It alleges sales to

12   "over 23 different retailers, distributors, and companies purchasing the products for resale" in

13   Europe; sales to "a dozen" different companies in North America; and that it "received interest"

14   from venture capital firms and outside investors worldwide.  (SAC ¶¶ 33-34)  The SAC fails to

15   identify any of these companies or investors.

16        Similarly vague are the allegations that Apple "spread the word throughout the industry"

17   that Luxpro was selling illegal copies of Apple's products, and that Apple used a "pattern of sham

18   litigation and misrepresentations" to ruin Luxpro's reputation "with the public, prospective

19   customers and business partners, and with its current customers, business contacts, and partners."

20   (SAC ¶¶ 40, 44; *see also* SAC ¶¶ 47-51)  Luxpro then alleges that Apple suppliers ASUS and

21   Synnex "spread disparaging comments" and made "threats of similar litigation and boycott"

22   against "anyone who cooperated with Luxpro (SAC ¶ 60), but the SAC does not identify any of

23   the recipients of the statements, the content of those statements, or any disruption of a business

24   relationship or contract.  Accordingly, none of these allegations can support an interference claim.

25            **B.**    **Luxpro's Entity-Specific Allegations Are Insufficient**

26        The District Court previously dismissed the interference claims, because Luxpro failed to

27   plead facts establishing business relationships with several entities and failed to plead facts

28

1    showing that certain entities had discontinued their relationships or breached contracts. *Luxpro*,

2    658 F. Supp. 2d at 932-33. Luxpro fails to remedy these defects in the SAC. Instead, Luxpro

3    adds to the list of entities—for a total of 36—in the apparent hope that something will stick.

4    Luxpro's allegations cannot withstand scrutiny. With respect to each entity named, the SAC fails

5    to plead facts establishing one or more elements of tortious interference.

6        Luxpro cannot state a claim without alleging that Apple actually committed an act of

7    interference. *See Luxpro*, 658 F. Supp. 2d at 930-31.[3] As to 13 of the 36 entities named, Luxpro

8    fails to allege *any* acts by Apple, much less any act of interference.[4] As to 14 other entities,

9    Luxpro makes only the conclusory allegation that agreements and economic relationships were

10   terminated and that those terminations "are directly attributable to Apple's illegal conduct."

11   (SAC ¶ 49; *see also* SAC ¶¶ 55, 58) Luxpro does *not* allege any contact by Apple with these

12   entities, or any specific acts by Apple that were directed at these entities.[5]

13       Luxpro also fails to plead actual disruption of any economic relationship or contract as to

14   16 entities.[6] Luxpro thus fails to plead the required element of causation for either of its tortious

15   interference claims. *See Luxpro*, 658 F. Supp. 2d at 932-33 (dismissing claims regarding certain

16       [3] California law applies, although the choice between California and Arkansas law makes
     no difference for any argument in this Motion. The fundamental inquiry in Arkansas's choice-of-
17   law analysis is what state has the most significant relationship to the parties and issues. *See
     Lane v. Celadon Trucking, Inc.*, 543 F.3d 1005, 1010 (8th Cir. 2008). The only state that could
18   possibly meet that requirement is California, where Apple is located and where much of the
     challenged conduct occurred. The case has no relationship to Arkansas, which is why it was
19   transferred.

20       [4] The 13 entities are: Seitec; Beijing Big Boss; Longda Tech.; AboCom Systems; Golden
     View; Gajah; Datapool Systems; Best Buy; RadioShack; Wal-Mart; Elecom; Gre-Tai; and
21   Starbucks Japan. Indeed, with respect to Starbucks Japan, Luxpro abandoned any claim of
     interference by Apple. In the FAC, Luxpro alleged that Apple "pressured Starbucks to quash its
22   deal with Luxpro." (FAC ¶ 32) Luxpro does not make this allegation in the SAC, however, or
     any other allegation regarding Apple's supposed interference with Starbucks. (*See* SAC ¶ 54)
23

24       [5] The 14 entities are: Tounsen; Beijing Huaqi; Beijing Qian Kun; TCL Digital
     Electronics; Victor Japan; Laos; N.A.K.S. Asia; Funai; Keller Trading; Broadman; Twister
25   Sound; Japan Airlines; Bruder; and Nikko VC.

26       [6] These 16 include 12 that also suffer from Luxpro's failure to allege acts of interference
     by Apple (as noted above): Seitec; Beijing Big Boss; Longda; AboCom; Golden View; Gajah;
27   Datapool; Best Buy; RadioShack; Wal-Mart; Starbucks Japan; and Bruder. The four additional
     entities in the list of 16 are: Fatech; Dai-ichi Denki; TKEC 3C; and ET-Mall TV Shopping.

28

1    purported customers because Luxpro failed to allege that they discontinued business relations

2    with Luxpro or breached any contract with Luxpro).

3         Luxpro fails to sufficiently plead a business relationship with several entities.  Luxpro

4    does not plead sufficient facts establishing any economic relationship, or prospect of a

5    relationship, with ten of the entities described above (Best Buy, RadioShack, Wal-Mart, Elecom,

6    Fatech, Dai-ichi Denki, TKEC 3C, ET-Mall TV Shopping, and Bruder), as well as one additional

7    entity—WebWorker.  (*See* SAC ¶ 52)  Luxpro cannot state a claim based on these entities.  *See*

8    *Luxpro*, 658 F. Supp. 2d at 932 (allegation that companies were clients or distributors of Luxpro

9    was insufficient to plead facts establishing a business relationship with Luxpro under *Twombly*).

10   Luxpro also fails to allege a contract for 25 entities.[7]  Thus any interference with contract claim

11   based on these entities fails.  *Id*. at 930-31.

12        Luxpro also fails to sufficiently allege Apple's knowledge of the economic relationship or

13   contract as to a subset of the entities described above.  These entities are the companies listed in

14   paragraphs 30 and 33 of the SAC (with three exceptions, Tounsen, Kaga, and Orchard); Best

15   Buy; RadioShack; Wal-Mart; Elecom; Gre-Tai; Starbucks Japan, Japan Airlines; Bruder; and

16   Nikko VC.  Thus, the claim fails as to these entities.  *Luxpro*, 658 F. Supp. 2d at 930-31

17   (knowledge of relationship or contract is an element of a tortious interference claim).

18        Finally, for all entities identified in the SAC, Luxpro fails to plead the required element of

19   independently actionable conduct by Apple.  A claim for interference with prospective economic

20   advantage requires "independently wrongful acts" — i.e., acts that are "unlawful, that is, . . .

21   proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal

22   standard."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158, 1159 (2003).

23   The conduct alleged in the SAC consists solely of Apple's lawful attempts to protect its

24

25
_____

26   [7] The 25 are:  InterTAN; Gre-Tai; Kaga Electronics; Seitec; Beijing Big Boss; Longda;
     AboCom; Golden View; Orchard; Gajah; DataPool; WebWorker; Elecom; Best Buy;
27   RadioShack; Wal-Mart; Starbucks Japan; Japan Airlines; Fatech; Carrefour; Dai-ichi Denki;
     TKEC 3C; ET Mall TV Shopping; Bruder; and Nikko VC.

28

1   intellectual property rights; the SAC fails to establish that these attempts were unlawful by any

2   legal standard.

3       Specifically, Luxpro's allegations regarding InterTAN, Orchard, Kaga, and Carrefour are

4   insufficient to state a claim.  None of the allegations is sufficiently specific to satisfy the

5   *Iqbal/Twombly* standard.  Moreover, the allegations demonstrate that Apple's purported actions

6   are protected by *Noerr-Pennington*.  For InterTAN, the SAC vaguely alleges that Apple placed

7   "significant pressure" on InterTAN to stop selling Luxpro's products, but it is clear that Luxpro

8   alleges only that Apple "pressure[d]" InterTAN based on the assertion of intellectual property

9   rights.  (*See* SAC ¶ 48)  With respect to Orchard and Kaga, the SAC *expressly* alleges that

10  Apple's "interference" was based on the protection of intellectual property rights.  (*See* SAC ¶ 52

11  (alleging that Apple threatened Orchard and Kaga with the "same type of lawsuits Apple had filed

12  against Luxpro")  The same is true for Carrefour:  the SAC expressly alleges that Apple's

13  "interference" was based on the assertion that Carrefour was selling a Luxpro product that

14  infringed Apple's intellectual property.  (SAC ¶ 56 (alleging that Apple communicated to

15  Carrefour that "Luxpro had illegally copied Apple's products"))  Thus, Luxpro fails to establish

16  independently actionable conduct with respect to any third-party entity.

17      In sum, Luxpro's attempt to state an interference claim with respect to the 36 entities

18  mentioned in the SAC fails as to each, for multiple reasons.

19      **III.    LUXPRO'S LANHAM ACT CLAIM FAILS**

20      Luxpro's Lanham Act claim fails, because Apple's alleged statements are not actionable

21  under the Lanham Act.  Luxpro does not specify which prong of the Lanham Act it contends

22  Apple violated, but the SAC's allegation that Apple misrepresented the "nature or characteristics

23  of [Luxpro], its business practices and products" demonstrates that the intended claim is one for

24  "false advertising."  (*Compare* SAC ¶ 77 *with* 15 U.S.C. § 1125(a)(1)(B) (prohibiting commercial

25  advertising or promotion that misrepresents the nature, characteristics, qualities, or geographic

26  origin of the advertiser's or another person's goods, services, or commercial activities))

27

28

A false advertising claim, however, can only be based on "commercial advertising or promotion." *Auto-Chlor Sys. of Minn., Inc. v. JohnsonDiversey*, 328 F. Supp. 2d 980, 1018 (D. Minn. 2004) (citing 15 U.S.C. § 1125(a)(1)(B)).  Communications sent to customers regarding litigation do not constitute "commercial advertising or promotion."  *See, e.g.*, *ISI Int'l, Inc. v. Broden Ladner Gervais LLP*, 316 F.3d 731, 733 (7th Cir. 2003) (letters sent to customers asserting that plaintiff lacked license rights to subject invention and asserting that defendant's client himself had patent were not commercial advertising); *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*, No. 97-1568-(JAG), 2007 U.S. Dist. LEXIS 23636, at *50-51 (D.N.J. Mar. 30, 2007) (notices of infringement sent to plaintiff's customers were not commercial advertising); *Futuristic Fences, Inc. v Illusion Fence Corp.*, 558 F. Supp. 2d 1270, 1281 (S.D. Fla. 2008) (cease and desist letters sent to plaintiff's customers were not commercial advertising); *cf. Porous Media Corp. v. Pall Corp.*, 201 F.3d 1058, 1059 (8th Cir. 2000) (press releases discussing litigation were not commercial advertising); *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008) (statements to customers regarding licensing status of products at issue were not actionable).  The alleged representations by Apple were the same type of cease-and-desist statements that these cases held are not actionable.

Luxpro's claim fails for an additional reason:  Apple's purported communications were not designed to influence Luxpro's customers to buy anything from Apple.  To state a claim, the statements at issue must have been made to influence consumers to buy the defendant's products. *See Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734-35 (9th Cir. 1999). Communications with a plaintiff's customers stating the defendant's intent to enforce its intellectual property rights (through litigation or otherwise) do not meet this requirement.  *See, e.g., Avery Dennison*, 2000 U.S. Dist. LEXIS 3938, at *25 ("Avery would not urge its attorney to send letters threatening lawsuits against its own customers as a way to promote Avery's own business."); *White Mule Co. v. ATC Leasing Co. LLC*, 540 F. Supp. 2d 869, 898 (N.D. Ohio 2008) (letters sent to plaintiff's prospective customers regarding lawsuit were not designed to persuade customers to buy defendant's goods); *Futuristic Fences*, 558 F. Supp. 2d at 1281 (cease

1    and desist letters sent to plaintiff's customers were not designed to influence customers into

2    buying defendant's products, but rather to protect defendant's legal rights).

3        In sum, the communications at issue do not constitute "commercial advertising or

4    promotion," and Luxpro's Lanham Act therefore fails as a matter of law.[8]

5                    ## IV.    LUXPRO'S CLAIM UNDER THE UCL FAILS

6        Luxpro fails to state a claim under any of the UCL's three prongs.  First, Luxpro fails to

7    state a claim for "unlawful" competition, because Luxpro's non-UCL claims are all meritless.

8    *Glenn K. Jackson, Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001) (UCL does not give plaintiff

9    "license to 'plead around' the absolute bars to relief contained in other possible causes of action

10   by recasting those causes of action as ones for unfair competition"); *Daly v. Viacom, Inc.*, 238 F.

11   Supp. 2d 1118, 1126 (N.D. Cal. 2002) (where plaintiff's other claims failed, UCL claim based on

12   the same conduct failed as well).

13       Second, the SAC fails to allege "unfair" competition.  Where, as here, a competitor brings

14   a UCL claim under the "unfair" prong, it must establish that the defendant's conduct was an

15   antitrust violation or an incipient antitrust violation.  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular*

16   *Tel. Co.*, 20 Cal. 4th 163, 187 (1999); *Sybersound Records*, 517 F.3d at 1151-52, 1153 (where

17   competitor plaintiff fails to plead at least an incipient violation of antitrust laws, its claim under

18   "unfair" prong must be dismissed).  The SAC, however, does not allege any facts that even

19   suggest Apple's conduct harmed competition, rather than just Luxpro.  *Cel-Tech*, 20 Cal. 4th at

20   186 (antitrust laws "were enacted for the 'protection of *competition*, not *competitors*'") (citations

21   omitted).  Moreover, because all of Apple's conduct is protected by *Noerr-Pennington*, that

22   _____

23       [8] Luxpro's Lanham Act claim also fails to satisfy Fed. R. Civ. P. 9(b).  Rule 9(b) applies
     to false advertising claims involving alleged misrepresentations.  *See Brosnan v. Tradeline
24   Solutions, Inc.*, No. C-08-0694 JCS, 2009 U.S. Dist. LEXIS 48262, at *11-12 (N.D. Cal. June 5,
     2009).  Although Luxpro bases its claim on alleged "material misrepresentations and false
25   disparaging statements" (SAC ¶ 77), Luxpro fails to plead the claim with any specificity
     whatsoever, making only general allegations about supposed "threats."  (*See, e.g.*, SAC ¶¶ 40, 44,
26   47)  Luxpro comes nowhere near meeting Rule 9(b)'s requirements.  *See Vess v. Ciba-Geigy
     Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (conclusory allegations of fraud are insufficient);
27   *Brosnan*, 2009 U.S. Dist. LEXIS 48262, at *15-16 (dismissing Lanham Act claim for failure to
     specify who made misleading statements, when they were made, or how they were misleading).

28

1   conduct cannot be "unfair" under the UCL.  *Chavez v. Whirlpool Corp*., 93 Cal. App. 4th 363,

2   375 (2001); *G. Fruge Junk Co. v. Oakland*, 637 F. Supp. 422, 425 (N.D. Cal. 1986).

3         Third, Luxpro's claim fails under the "fraudulent" prong of the UCL, because Luxpro fails

4   to identify any facts supporting the claim that could satisfy Rule 9(b).  *See Kearns v. Ford Motors*

5   *Co.*, 567 F.3d 1120, 1126-27 (9th Cir. 2009).  Luxpro must at a minimum identify with

6   particularity the statements that were made.  *Id*.  The SAC contains no such allegations.

7   **V.      LUXPRO'S "COMMERCIAL DISPARAGEMENT" CLAIM FAILS**

8         The District Court previously dismissed Luxpro's "commercial disparagement" claim for

9   failure to identify adequately the allegedly disparaging statements and for failure to plead special

10   damages.  *Luxpro*, 658 F. Supp. 2d at 935-36.  The SAC does not cure these defects.

11         It is unclear whether Luxpro's claim is for defamation or trade libel.  Both, however,

12   require that Luxpro specifically identify the allegedly defamatory statement, as well as the

13   speaker, recipients, timing, and context.  *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F.

14   Supp. 1303, 1314 (N.D. Cal. 1997); *Jones v. Thyssenkrup Elevator Corp.*, No. C-05-3539 EMC,

15   2006 U.S. Dist. LEXIS 13978, at *16-17 (N.D. Cal. Mar. 14, 2006); *Eldorado Stone, LLC v.*

16   *Renaissance Stone, Inc.*, No. 04cv2562 JM (LSP), 2005 U.S. Dist. LEXIS 45237, at *10-11 (S.D.

17   Cal. Aug. 10, 2005).  The SAC fails to plead even a minimum level of detail, referring to Apple's

18   statements only as "threats," "misrepresentations," and "disparaging comments."  (*See, e.g.*, SAC

19   ¶¶ 49-63)  The commercial disparagement claim fails for this reason alone.  With respect to all of

20   the alleged Luxpro customers mentioned in the SAC, Luxpro fails sufficiently to allege any

21   statement by Apple.  Obviously a defamation or trade libel claim requires that a statement be

22   pled.  *See Luxpro*, 658 F. Supp. 2d at 934-35; *see also Webb v. Olive Garden Italian Rests.*, No. C

23   08-04913 PVT, 2009 U.S. Dist. LEXIS 107774, at *15 (N.D. Cal. Oct. 29, 2009);

24   *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1010 (2001).

25         Luxpro also fails to allege special damages, as required to state a claim for trade libel.  *See*

26   *Eldorado Stone*, 2005 U.S. Dist. LEXIS 45237, at *10-11.  At a minimum, Luxpro must plead it

27   has an "established business, the amount of sales for a substantial period preceding the

28

1    publication, the amount of sales subsequent to the publication, and facts showing that such

2    loss[es] in sales were the natural and probable result of such publication." *Luxpro*, 658 F. Supp.

3    2d at 935 (citation omitted). The SAC is inadequate as to each entity with which Apple

4    supposedly communicated. For InterTAN, Luxpro simply repeats allegations that the District

5    Court held were insufficient. *Id.* at 935-36. Luxpro fails to allege any of the required details for

6    statements supposedly made to Gre-Tai, WebWorker, Elecom, Best Buy, Radio Shack, Wal-Mart,

7    Starbucks Japan, Japan Airlines, Carrefour, Fatech, Dai-ichi Denki, TKEC 3C, ET-Mall TV

8    Shopping, Bruder, and Nikko VC. Luxpro's allegations regarding Orchard and Kaga Electronics

9    (as well as all of the other companies identified in paragraph 33 of the SAC) are similarly

10   unspecific. Luxpro alleges the total number of sales, but never provides individual sales numbers

11   for any of those companies. (*See* SAC ¶ 33) Finally, with regard to the eleven entities with

12   which it allegedly had contracts (*see* SAC ¶ 30), Luxpro fails to allege that it actually made any

13   sales to those entities at all, much less for a substantial period preceding any acts by Apple.

14          Finally, Luxpro fails to plead whether Apple's alleged statements to Luxpro's purported

15   customers were in writing, further defeating any claim for libel or trade libel. Cal. Civ. Code § 45

16   (libel is a false and unprivileged publication in writing); *Gibson v. Regions Fin. Corp.*, No.

17   4:05CV01922 JLH, 2008 U.S. Dist. LEXIS 1570, at *15 (E.D. Ark. Jan. 9, 2008) ("libel is 'the

18   publication of defamatory matter by written or printed words'") (citation omitted), *aff'd*, 557 F.3d

19   842 (8th Cir. 2009). Because no writing is pled, Luxpro can only assert a claim for slander, but

20   that claim would be barred by the one-year statute of limitations. Ark. Code Ann. § 16-56-104.[9]

21   Dated: October 15, 2010                    MORRISON & FOERSTER LLP

22
                                               By: _____/s/ Penelope A. Preovolos_____
23                                                      Penelope A. Preovolos

24                                                  Attorneys for Defendant
                                                    APPLE INC.
25

26   _____

27          [9] Because statutes of limitations are generally considered procedural under Arkansas
     choice-of-law rules, the law of the transferor forum (Arkansas) applies.
28