**United States District Court**
For the Northern District of California

1

2

3

4

5 **NOT FOR PUBLICATION**

6

7 IN THE UNITED STATES DISTRICT COURT

8 FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10 LUXPRO CORPORATION, a Taiwanese       No. C 10-03058 JSW
corporation

11       Plaintiff,       **ORDER GRANTING IN PART
AND DENYING IN PART**
12   v.       **DEFENDANT'S MOTION TO
DISMISS THE SECOND**
13 APPLE INC. f/k/a Apple Computer, Inc.,       **AMENDED COMPLAINT**

14       Defendant.

15 _____/

16                    **INTRODUCTION**

17       Now before the Court for consideration is the motion to dismiss filed by Defendant

18 Apple Inc. ("Apple").  The motion is fully briefed and ripe for decision.  Having considered the

19 parties' papers, the relevant legal authority, and the record in this case, the Court GRANTS IN

20 PART AND DENIES IN PART Apple's motion to dismiss and GRANTS Luxpro leave to

21 amend the Second Amended Complaint ("SAC").

22                    **BACKGROUND**

23 **A.    Factual Background.**

24       Plaintiff Luxpro Corporation ("Luxpro") and Apple both manufacture and sell MP3

25 players.  (SAC ¶¶ 1-2, 10, 27.)  From 2003 to 2006, Luxpro entered into a number of

26 distribution agreements with, and received orders from, distributors, suppliers, and retailers for

27 its MP3 products.  (SAC ¶¶ 30-33.)  Venture capital firms and outside investors were interested

28 in investing in Luxpro.  (SAC ¶ 34.)  Due to Luxpro's growth in business, Luxpro prepared its

1    stock to be publicly traded on the Gre-Tai Securities Market, a Taiwanese public stock

2    exchange.  (SAC ¶ 35.)

3          In February 2005, Luxpro developed a prototype MP3 player called the "Super Shuffle"

4    that was intended to compete with Apple's MP3 player, the "iPod Shuffle."  (SAC ¶ 37.)

5    Following the introduction of the Super Shuffle at a trade show in Germany in March 2005,

6    Apple sought and received an injunction against Luxpro in Germany, and Luxpro was ordered

7    to abandon use of the word "shuffle" in its product name.  (*Id.*)  Luxpro complied and changed

8    its product name to the "Super Tangent."  (*Id.*)  In August 2005, Apple sought and received a

9    preliminary injunction in Taiwan based on allegations that Luxpro's MP3 players too closely

10   resembled Apple's iPod Shuffle.  (SAC ¶ 39.)  The Taiwanese court prohibited Luxpro from

11   manufacturing, distributing, or marketing three of its MP3 players in the "Tangent" line.  (*Id.*)

12   Luxpro successfully appealed, and the Taiwanese court reversed the injunction for all of

13   Luxpro's products, except the one product that previously contained the term "shuffle."  (SAC

14   ¶ 41.)  Apple unsuccessfully appealed the reversal of the injunction.  (SAC ¶¶ 42, 45.)  Apple

15   also filed a complaint with the Taiwanese Fair Trade Commission, alleging that Luxpro violated

16   Taiwan's Fair Trade Act by selling products that were confusingly similar to Apple's products,

17   but the Taiwanese Fair Trade Commission ruled against Apple.  (SAC ¶ 46.)

18         Luxpro alleges that after Apple received the preliminary injunction in Tawian, and while

19   Apple's appeals were pending with the Taiwanese court and the Taiwanese Fair Trade

20   Commission, Apple "continued to threaten Luxpro's distributors and retailers to the point where

21   they could not afford to do business with Luxpro any longer."  (SAC ¶ 48.)  Luxpro alleges that

22   Apple threatened Luxpro's commercial partners with the same type of litigation that Apple filed

23   against Luxpro, and alleges that Apple threatened to deny access to Apple products if Luxpro's

24   distributors continued to do business with Luxpro.  (SAC ¶ 40.)  Luxpro alleges that Apple

25   made misrepresentations and disparaging statements about Luxpro's products, causing Luxpro's

26   customers, retailers, and distributors to stop doing business with Luxpro.  (SAC ¶ 49.)  Luxpro

27   also alleges that Apple "spread the word throughout the industry that Luxpro was selling cheap

28   'knock-offs' and cheap and illegal copies of Apple's iPod products."  (SAC ¶ 40.)

**United States District Court**
For the Northern District of California

2

**B.     Procedural History.**

On October 14, 2008, Luxpro filed a complaint in the United States District Court for the Western District of Arkansas (the "Arkansas District Court"), and filed an amended complaint in that court on October 20, 2008.  (Docket Nos. 1, 6.)  On December 19, 2008, Apple moved to dismiss Luxpro's First Amended Complaint ("FAC").  (Docket No. 23.)  On September 28, 2009, the Arkansas District Court entered an order granting in part and denying in part Apple's motion to dismiss, with leave to amend the FAC ("the September 28 Order"). *Luxpro Corp. v. Apple, Inc.*, 658 F. Supp. 2d 921, 936 (W.D. Ark. 2009).  Luxpro filed the SAC on December 29, 2009.  (Docket No. 62.)  In the SAC, Luxpro asserts the following causes of action: (1) intentional interference with prospective economic advantage; (2) intentional interference with contractual relations; (3) violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (4) commercial disparagement; and (5) violation of California Business and Professions Code §§ 17200, et seq. (the "Section 17200 claim").  On July 7, 2010, the case was transferred to this Court.  (Docket No. 83.)  Apple now moves to dismiss the SAC.  (Docket No. 141.)

## ANALYSIS

**A.     Applicable Legal Standard.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted.  The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).  However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at

3

570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . .  When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).  If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted).  However, documents subject to judicial notice may be considered on a motion to dismiss.  In doing so, the Court does not convert a motion to dismiss to one for summary judgment. *See Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).

**B.      The Court Grants Apple's Request For Judicial Notice.**

Apple filed a request for judicial notice in conjunction with its motion to dismiss, by which it seeks judicial notice of orders from the Taiwanese and German courts.  Apple seeks judicial notice of the foreign court orders on the basis that Luxpro references the orders in the SAC.  "Courts may only take judicial notice of adjudicative facts that are 'not subject to reasonable dispute.'" *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (quoting Fed. R. Evid. 201(b)).  Under the "incorporation by reference" doctrine, courts may consider documents that are "referenced extensively in the complaint and [are] accepted by all parties as authentic." *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

**United States District Court**
For the Northern District of California

1   Luxpro objects to the foreign court orders and argues that its asserted claims are not based on

2   those rulings.  However, Luxpro seeks relief for economic loss that occurred to Luxpro when

3   Luxpro was "forced to stop all production, manufacturing, advertising and marketing" because

4   of the injunctions.  (SAC ¶ 41.)  Therefore, many of Luxpro's claims rely on the fact that Apple

5   successfully sought the foreign injunctions against Luxpro.  Luxpro also argues that the orders

6   are inaccurate because they are unauthenticated.  However, the foreign court orders were

7   submitted by translators who certified under penalty of perjury that they translated true and

8   correct copies of the orders and that they have provided true and correct copies of their

9   translations.  (*See* Declaration of Michael Hofhine in Support of Apple's Motion to Dismiss

10  ("Hofhine Decl.") at 1-2; Declaration of Meihua Shi in Support of Apple's Motion to Dismiss

11  ("Shi Decl.") at 1-2.)  This is sufficient to certify the documents' accuracy.  *See* 28 U.S.C.

12  § 1746; *Commodity Futures Trading Com'n v. Topworth Intern., Ltd.*, 205 F.3d 1107, 1112 (9th

13  Cir. 1999).  Therefore, the Court GRANTS Apple's request for judicial notice.

14  **C.      The *Noerr-Pennington* Doctrine Does Not Completely Protect Apple's Conduct.**

15          Apple moves to dismiss the SAC in its entirety on the basis that Apple is immune from

16  liability because the *Noerr-Pennington* doctrine protects Apple's pursuit of the foreign

17  injunctions against Luxpro as well as Apple's alleged threats to Luxpro's commercial partners.

18  In response, Luxpro argues that the *Noerr-Pennington* doctrine does not protect any of Apple's

19  alleged conduct.  Under the *Noerr-Pennington* doctrine, those who petition the government for

20  redress are generally immune from antitrust, statutory, or tort liability as part of the First

21  Amendment right to petition the government.  *Theme Promotions, Inc. v. News America Mktg*

22  *FSI*, 546 F.3d 991, 1007 (9th Cir. 2008)*; Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir.

23  2006) (citing *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127

24  (1961) and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965)).  The *Noerr-Pennington*

25  doctrine protects a party's effort to petition the government in litigation, unless the litigation is

26  "is a mere sham to cover what is actually nothing more than an attempt to interfere directly with

27  the business relationships of a competitor."  *California Motor Transport Co. v. Trucking*

28  *Unlimited*, 404 U.S. 510, 511 (1972) (internal quotation omitted).  In addition to protecting

United States District Court

For the Northern District of California

alleged harms caused by a legitimate lawsuit, the *Noerr-Pennington* doctrine also protects conduct that is "incidental to the prosecution of the suit." *See Sosa*, 437 F.3d at 949 (internal quotation omitted).

1.      **The Arkansas District Court's Prior Ruling on the *Noerr-Pennington* Doctrine.**

In the September 28 Order, the Arkansas District Court concluded that the *Noerr-Pennington* doctrine protects some, but not all, of Apple's alleged conduct. *Luxpro*, 658 F. Supp. 2d at 927-29.  In the FAC, Luxpro claimed that it lost product orders and valuable market opportunities due to the lawsuits Apple filed in Germany and Taiwan.  Luxpro also claimed that Luxpro's commercial partners terminated their business relationships with Luxpro, after Apple sent letters to Luxpro's commercial partners threatening them with potential lawsuits and pressuring them to discontinue their business relationships with Luxpro.  Regarding the litigation in Germany and Taiwan, the Arkansas District Court determined that the two lawsuits were not mere shams because Apple succeeded in obtaining the injunction in Germany and the preliminary injunction in Taiwan.  *Id.* at 928; *see also Omni Resource Development Corp. v. Conoco, Inc.*, 739 F.2d 1412, 1414 (9th Cir. 1984) (holding that a lawsuit was not objectively baseless regardless of the ultimate outcome because the court granted a preliminary injunction). Regarding Apple's threat letters, the Arkansas District Court reasoned that because Apple sent the letters after it received the injunctions, Apple's conduct was not incidental to the prosecution of the foreign litigation.  *Id.* at 929.  Therefore, the *Noerr-Pennington* doctrine did not protect Apple's "post-litigation conduct," *i.e.* Apple's alleged threats to Luxpro's commercial partners.  *Id.*

Both parties rely in part on the Arkansas District Court's conclusion that the *Noerr-Pennington* doctrine protects some, but not all, of Apple's conduct to support their respective positions.  Luxpro relies on the Arkansas District Court's conclusion that the *Noerr-Pennington* doctrine does not protect Apple's alleged threats to Luxpro's commercial partners, but it now argues that the *Noerr-Pennington* doctrine also does not protect Apple's pursuit of the foreign lawsuits, including the complaint Apple filed with the Taiwanese Fair Trade Commission.

1    Apple relies on the Arkansas District Court's conclusion that the *Noerr-Pennington* doctrine

2    protects Apple's pursuit of the foreign lawsuits, but it now argues that the *Noerr-Pennington*

3    doctrine also protects Apple's alleged threats to Luxpro's commercial partners.

4        **2.    The *Noerr-Pennington* Doctrine Protects Apple's Pursuit of the Injunctions
              in Germany and Taiwan.**

5

6        In opposition to Apple's motion to dismiss, Luxpro asserts that Apple is not immune

7    from liability for the harms to Luxpro caused by Apple's lawsuits in Germany and Taiwan,

8    because the lawsuits fall within the "sham exception" to the *Noerr-Pennington* doctrine.  To

9    determine whether litigation is a sham, a court considers whether: (1) the lawsuit is "objectively

10   baseless" such that "no reasonable litigant could realistically expect to succeed on the merits;"

11   and (2) it is the subjective intent of the litigant to "interfere directly with the business

12   relationships of the competitor."  *Professional Real Estate Investors, Inc. v. Columbia Pictures*

13   *Industries, Inc.*, 508 U.S. 49, 60-61 (1993).  "If an objective litigant could conclude that the suit

14   is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and

15   an antitrust claim premised on the sham exception must fail."  *Id.* at 60.  In its SAC, Luxpro

16   fails to allege any new facts that would indicate that Apple's lawsuits in Germany and Taiwan

17   were objectively baseless.  Absent such facts, this Court finds no basis to reconsider the

18   Arkansas District Court's conclusions that the *Noerr-Pennington* doctrine protects Apple's

19   pursuit of the injunctions in Germany and Taiwan.  *See Luxpro*, 658 F. Supp. 2d at 928.

20   Therefore, the Court concludes that the sham exception does not apply to Apple's lawsuits in

21   Germany and Taiwan.

22       Luxpro also argues that Apple's lawsuits in Germany and Taiwan fall within the

23   "pattern exception" to the *Noerr-Pennington* doctrine.  Under the pattern exception, a party is

24   not immune from liability when the party brings a series of meritless lawsuits.  *USS-POSCO*

25   *Indus. v. Contra Costa County Bldg. & Const. Trades*, 31 F.3d 800, 811 (9th Cir. 1994).  The

26   inquiry then becomes whether a "series of lawsuits . . . are brought pursuant to a policy of

27   starting legal proceedings without regard to the merits and for the purpose of injuring a market

28   rival."  *Id.*  However, if a defendant prevails in more than half of its lawsuits, it is unlikely that

1    the lawsuits are meritless. *See id.* ("The fact that more than half of all the actions . . . turn[ed]

2    out to have merit cannot be reconciled with the charge that the [defendants] were filing lawsuits

3    and other actions willy-nilly without regard to success."). Because Apple succeeded in

4    obtaining the injunction in Germany and the preliminary injunction in Taiwan, the lawsuits

5    were not meritless. Furthermore, although Apple brought multiple actions against Luxpro,

6    Apple's two foreign lawsuits and its complaint filed with the Taiwanese Fair Trade Commission

7    do not constitute a "series of lawsuits."[1] *Compare Amarel v. Connell*, 102 F.3d 1494, 1519 (9th

8    Cir. 1995) (holding that two lawsuits was not "a whole series of legal proceedings" or a "pattern

9    of baseless, repetitive claims"); *Coca-Cola Co. v. Omni Pac. Co.*, 1998 U.S. Dist. LEXIS

10   23277, at *24 (N.D. Cal. Dec. 9, 1998) (concluding that four lawsuits did not constitute a series

11   of lawsuits), *with USS-POSCO*, 31 F.3d 800, 811 (determining that twenty-nine lawsuits

12   constituted a series of lawsuits). Accordingly, the Court concludes that the pattern exception

13   does not apply to Apple's foreign litigation.

14       Lastly, Luxpro argues that Apple's foreign litigation is not immune because the *Noerr-*

15   *Pennington* doctrine does not protect actions undertaken in foreign countries. Although it

16   appears that the Ninth Circuit has not addressed whether the *Noerr-Pennington* doctrine

17   protects parties' efforts to petition foreign governments, the Fifth Circuit has held that it does.

18   In *Coastal States Marketing, Inc. v. Hunt*, the Fifth Circuit reasoned, "[t]he Sherman Act, as

19   interpreted by *Noerr*, simply does not penalize as an antitrust violation the petitioning of a

20   government agency." 694 F.2d 1358, 1366 (5th Cir. 1983). Therefore, according to the Fifth

21   Circuit, a party should not be held liable for conduct that would be legal and protected if it was

22   performed in the United States, but is now illegal because it was performed abroad. *Id.* The

23   Court finds the Fifth Circuit's reasoning persuasive. *See also Coca-Cola*, 1998 U.S. Dist.

24   LEXIS 23277, at *28-*30 (finding *Coastal States Marketing* persuasive and concluding that the

25

26      [1]    Luxpro claims that Apple's appeals in the Taiwanese court count as a separate

27   action in the "series of lawsuits." The Court is not aware of any cases, nor does Luxpro cite any cases, that support the notion that the Court should count appeals as a separate proceeding. *Cf. Kaiser Foundation Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033,

28   1046 (9th Cir. 2009) (including unsuccessful appeals in the same litigation as the lawsuit filed in the district court for purposes of the pattern exception).

*Noerr-Pennington* doctrine applies to petitions to foreign governments.)  Therefore, the Court concludes that the *Noerr-Pennington* doctrine also protects parties' efforts to petition foreign governments.

Accordingly, the Court grants, in part, Apple's motion to dismiss on this basis.

### 3.   The Court Cannot Conclude That the *Noerr-Pennington* Doctrine Protects Apple's Alleged Threats to Luxpro's Commercial Partners.

In its motion to dismiss, Apple asserts that Luxpro's SAC should be dismissed in its entirety because, in addition to protecting Apple's efforts to seek redress from the courts in Germany and Taiwan, the *Noerr-Pennington* doctrine also protects Apple's alleged threats to Luxpro's commercial partners.  Apple contends that its letters warned Luxpro's commercial partners about potential lawsuits that Apple would bring if the companies continued to sell Luxpro's products.  Therefore, according to Apple, the letters are incidental to the prosecution of a lawsuit and are protected by the *Noerr-Pennington* doctrine.  The Ninth Circuit has held that the *Noerr-Pennington* doctrine immunizes parties who send pre-litigation demand letters warning a potential adversary about the possibility of a lawsuit, because such communications are "conduct incidental to the prosecution of the suit."  *Sosa*, 437 F.3d at 939 (internal quotation omitted); *see also Theme Promotions*, 546 F.3d at 1008.  In *Sosa*, the Ninth Circuit adopted the First Amendment's "breathing space" principle from free speech cases and applied it to the petitioning context.  *Sosa*, 437 F.3d at 933-34.  Under the breathing space principle, the First Amendment protects conduct that does not fall within the protection of the speech clause in its own right, but must be protected to adequately safeguard the freedom of speech.  *Id.* at 933.  In the petitioning context, "to exercise its petitioning rights meaningfully, a party may not be subjected to liability for conduct intimately related to its petitioning activities." *Id.* at 934.  The Ninth Circuit noted that, consistent with the breathing space principle, it had previously recognized that the *Noerr-Pennington* doctrine also protects "conduct incidental to the prosecution of the suit."  *Id.* at 934-35 (citing *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*, 944 F.2d 1525, 1528-29 (9th Cir.1991)).

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

Although Luxpro alleges facts that suggest that Apple's threats and demands made to Luxpro's commercial partners may include pre-suit demand letters, Luxpro also makes some allegations that Apple generally threatened Luxpro's commercial partners to stop doing business with Luxpro without suggesting the possibility of a lawsuit or mentioning the enforcement of any intellectual property rights.  These threats are distinguishable from the pre-suit demand letters in *Sosa* because, as alleged, the threats do not mention any potential litigation or enforcement of intellectual property rights.  Thus, the Court cannot conclude that all of Apple's threats were "incidental to the prosecution of a lawsuit."  Therefore, the Court concludes that at this stage in the litigation, Apple is not entitled to immunity under the *Noerr-Pennington* doctrine for sending allegedly threatening letters to Luxpro's commercial partners.

Accordingly, the Court denies, in part, Apple's motion to dismiss on this basis.

**D.**     **Luxpro States a Claim for Intentional Interference with Prospective Economic Advantage for Some, But Not All, of Luxpro's Commercial Partners.[2]**

Apple asserts that Luxpro fails to state claims for intentional interference with prospective economic advantage with various retailers, distributors, and suppliers, as well as thirty-six specifically named entities.[3]  To state a claim for intentional interference with prospective economic advantage, a plaintiff must show: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the

---

[2]     The thirty-six specifically named entities are: Elecom, Co. Ltd, Japan Airlines, Nikko VC, Seitec Corporation, Beijing Big Boss, Longda Tech., AboCom Systems, Golden View, Co., Ltd., Gaiah International, DataPool Systems, Best Buy, Radioshack, Wal-Mart, and Starbucks Corporation, Circuit City Stores, Inc., Bruder Products, Ltd., Fatech Co., Dai-Daichi Denki, TKEC 3C, ET-Mall TV Shopping, Kaga Electronics, Limited, Orchard Co., WebWorker, Carrefour, InterTAN Canada, Ltd., Tounsen Corporation, Beijing Huaqi Informational Digital Technology Co., Ltd., Beijing Qian Kun Time Digital Technology Co., Ltd., TCL Digital Electronics, Victor Japan, Ltd., Laos Co. Ltd., N.A.K.S. Asia Limited, Funai Europe UK Representative, Keller Trading AB, Boardman Inc., and Twister Sound Pty Ltd.

[3]     Neither party distinguishes between the two distinct torts of intentional interference with contractual relations and intentional interference with prospective economic advantage.  For clarity, the Court shall address each tort separately.  *See Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392 (1995) (emphasizing the difference between intentional interference with prospective economic advantage and intentional interference with contractual relationship and urging courts to firmly distinguish between the two types of business contexts).

United States District Court

For the Northern District of California

1    plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of

2    the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and

3    (5) economic harm to the plaintiff proximately caused by the acts of the defendant.  *Luxpro*, 658

4    F. Supp. 2d at 930 (citing *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1153

5    (2003)).

6         **1.     Luxpro States a Claim for Intentional Interference with Prospective
           Economic Advantage With Respect to Its Retailers, Distributors, and**
7         **Suppliers**.

8         Apple moves to dismiss Luxpro's allegations that Apple interfered with existing

9    economic relationships with its "retailers, distributors and suppliers."  (SAC ¶ 7.)  Apple argues

10   that, in order to satisfy the first element of the tort, Luxpro must specifically name every entity

11   with whom Apple allegedly interfered.  In response, Luxpro argues that it does not need to

12   plead all acts of interference, but just enough facts to satisfy the elements of intentional

13   interference in its entirety.  Under California law, "a plaintiff that wishes to state a cause of

14   action for this tort must allege the existence of an economic relationship with some third party

15   that contains the probability of future economic benefit to the plaintiff."  *See Korea Supply*, 29

16   Cal. 4th at 1164.  A number of courts have held that specifying a third party group is sufficient

17   to state a claim, even if the plaintiff does not individually name each member of the group.  *See,*

18   *e.g.*, *Lee Myles Associates Corp. v. Paul Rubke Enterprises, Inc.*, 557 F. Supp. 2d 1134, 1140-

19   41 (S.D. Cal. 2008) (alleging interference with existing franchisees and "Area Development

20   Representatives" was sufficient to state a claim); *Aagard v. Palomar Builders, Inc.*, 344 F.

21   Supp. 2d 1211, 1219 (E.D. Cal. 2004) (alleging interference with "existing customers" was

22   sufficient to state a claim); *Janda v. Madera Community Hosp.*, 16 F. Supp. 2d 1181, 1189

23   (E.D. Cal. 1998) (alleging that defendant's tortious conduct impaired economic relationships

24   with existing patients survived a motion to dismiss); *Lowell v. Mother's Cake & Cookie Co.*, 79

25   Cal. App. 3d 13, 19 (1978) (alleging that defendant intended to discourage "purchasers" from

26   purchasing plaintiff's company was sufficient to state a claim).

27        Luxpro alleges that Apple interfered with its existing "commercial partners (i.e.

28   retailers, distributors and suppliers)" who purchased, sold, and manufactured Luxpro's MP3

United States District Court

For the Northern District of California

1     products.  (SAC ¶ 7.)  Luxpro alleges that Apple threatened these business partners, which

2     resulted in the cancellation of distributorship agreements, existing orders, and plans for future

3     orders.  Because Luxpro specified third party groups with which it had existing business

4     relationships, Luxpro's claim is akin to the plaintiffs' claims in *Lee Myles Associates*, *Aagard*,

5     *Janda*, and *Lowell*.  Thus, specifying third party groups such as retailers, distributors and

6     suppliers is sufficient to satisfy the first element of intentional interference with prospective

7     economic advantage.  *See Lee Myles Associates*, 557 F. Supp. 2d at 1140-41.

8          Regarding the remaining elements, Luxpro alleges sufficient facts to state a claim for

9     intentional interference with prospective economic advantage with Luxpro's relationships with

10    its retailers, distributors and suppliers.  Luxpro alleges that Apple knew of and intentionally

11    interfered with Luxpro's relationships with its distributors, retailers, and business partners, by

12    wrongfully threatening them until they ended their business relationships with Luxpro.  Luxpro

13    alleges that Apple's interference caused those relationships to terminate and as a result, Luxpro

14    experienced significant economic loss, such as lost profits and other consequential damages.

15    Therefore, the Court concludes that Luxpro states a claim for intentional interference with

16    prospective economic advantage with respect to its relationships with commercial retailers,

17    distributors, and suppliers.

18         Accordingly, the Court denies, in part, Apple's motion to dismiss on this basis.

19         **2.     Luxpro States a Claim for Intentional Interference with Prospective
              Economic Advantage With Respect to Some Specifically Named Entities.**
20

21         Regarding Luxpro's claims for intentional interference with prospective economic

22    advantage with the thirty-six specifically named entities, Luxpro states a claim for some, but not

23    all, of the entities.  First, Luxpro's allegations that Apple interfered with its relationships with

24    Elecom, Co. Ltd, Japan Airlines, and Nikko VC are insufficient to state a claim for intentional

25    interference with prospective economic advantage, because Luxpro does not allege that Apple

26    wrongfully interfered with those relationships.  To state a claim, the plaintiff must allege "that

27    the defendant engaged in an independently wrongful act" apart from the interference itself.

28

United States District Court

For the Northern District of California

1    *Korea Supply*, 29 Cal. 4th at 1158.  "[A]n act is independently wrongful if it is unlawful . . . ."

2    *Id.* at 1159.

3        Luxpro alleges that Elecom expressed interest in purchasing several thousand Luxpro

4    MP3 players, but Elecom later informed Luxpro that "because of the lawsuit with Apple, [it]

5    could not do business with Luxpro."  (SAC ¶ 53.)  The Court has already determined that

6    Apple's lawsuits in Germany and Taiwan are protected under the *Noerr-Pennington* doctrine,

7    and are therefore lawful.  Thus, Luxpro does not allege any facts to show that Apple disrupted

8    Luxpro's relationship with Elecom with an independently wrongful act.  Accordingly, the Court

9    grants, in part, Apple's motion to dismiss on this basis.

10        Regarding Japan Airlines and Nikko, Luxpro alleges that the two companies expressed

11    interest in doing business with Luxpro, but Luxpro only states that the potential deals were

12    cancelled due to Apple's "sham litigation," "illegal conduct," and "illegal tactics."  (SAC ¶¶ 55,

13    58.)  Again, because Apple's foreign lawsuits were lawful, Luxpro does not allege any facts to

14    show that Apple disrupted Luxpro's relationship with Japan Airlines and Nikko with an

15    independently wrongful act.  In addition, Luxpro's other claims that its relationships with Japan

16    Airlines and Nikko terminated due to Apple's  "illegal conduct" and "illegal tactics" are bare

17    legal conclusions unsupported by facts.  Luxpro does not allege that Apple directly interfered

18    with its relationship with Elecom, Japan Airlines, and Nikko with an independently wrongful

19    act.  Therefore, Luxpro's claims for intentional interference with prospective economic

20    advantage with respect to its relationships with Elecom, Co. Ltd, Japan Airlines, and Nikko VC

21    must fail.  Accordingly, the Court grants, in part, Apple's motion to dismiss on this basis.

22

23        Further, Luxpro's allegations with respect to Seitec Corporation, Beijing Big Boss,

24    Longda Tech., AboCom Systems, Golden View, Co., Ltd., Gajah International, DataPool

25    Systems, Best Buy, Radioshack, Wal-Mart, and Starbucks Corporation, Circuit City Stores,

26    Inc., Bruder Products, Ltd., Fatech Co., Dai-Daichi Denki, TKEC 3C, and ET-Mall TV

27    Shopping are insufficient to state a claim for intentional interference with prospective economic

28    advantage, because Luxpro does not allege that Apple's interference caused actual disruption of

United States District Court

For the Northern District of California

the relationships. *See Korea Supply*, 29 Cal. 4th at 1153.  Luxpro alleges that each of the above entities either ordered Luxpro's products, requested samples, or expressed interest in selling Luxpro's products.  However, Luxpro does not allege that these relationships terminated as a result of Apple's interference.[4]  In fact, Luxpro does not state any facts about how the relationships ended at all.  Therefore, Luxpro's claims for intentional interference with prospective economic advantage with respect to its relationships with Seitec Corporation, Beijing Big Boss, Longda Tech., AboCom Systems, Golden View, Co., Ltd., Gajah International, DataPool Systems, Best Buy, Radioshack, Wal-Mart, and Starbucks Corporation, Circuit City Stores, Inc. Bruder Products, Ltd., Fatech Co., Dai-Daichi Denki, TKEC 3C, and ET-Mall TV Shopping must fail.  Accordingly, the Court grants, in part, Apple's motion to dismiss on this basis.

Luxpro does, however, adequately plead a claim for intentional interference with prospective economic advantage with respect to its relationship with the following remaining entities: Kaga Electronics, Limited, Orchard Co., WebWorker, Carrefour, and InterTAN Canada, Ltd..  Regarding Orchard Co., WebWorker, Carrefour, and Kaga Electronics, Luxpro cured the deficiencies identified by the Arkansas District Court in the FAC.  Specifically, Luxpro now alleges that it previously sold MP3 products to Orchard, WebWorker, and Kaga Electronics, and that Carrefour's retails stores displayed and sold Luxpro's MP3 products in its stores.  These facts allege that Luxpro had a prior business relationship with these companies with the probability of economic benefit.  Luxpro satisfies the remainder of the elements of the tort by alleging that Orchard, WebWorker, and Kaga Electronics "ended all of their business relationships with Luxpro . . . based upon [Apple's] litigation threats and misrepresentations.". (SAC ¶ 52.)  Luxpro also alleges that Carrefour terminated its economic relationship with Luxpro when it discontinued sales of Luxpro's products and cancelled existing orders and distribution shipments after Apple directly threatened Carrefour to stop doing business with

---

[4]     Although the Arkansas District Court found that Luxpro stated a claim for relief with regard to a potential joint venture with Starbucks Corporation, Luxpro does not make the same allegations regarding Starbucks Japan in the SAC as it did in the FAC.  *See Luxpro*, 658 F. Supp. 2d at 932.

United States District Court
For the Northern District of California

1  Luxpro.  Therefore, the Court concludes that Luxpro states a claim for intentional interference

2  with prospective economic advantage with respect to its relationships with Orchard Co.,

3  WebWorker, Carrefour, and Kaga Electronics.  Accordingly, the Court denies, in part, Apple's

4  motion to dismiss on this basis.

5        Lastly, Luxpro's allegations with respect to InterTAN Canada, Ltd. are sufficient to

6  state a claim for intentional interference with prospective economic advantage.  Luxpro alleges

7  that it met with InterTAN about selling Luxpro's MP3s and InterTAN showed great interest.

8  Luxpro alleges that it shipped 7000 trial samples to InterTAN, and InterTAN actively promoted

9  Luxpro's products.  Luxpro further alleges that once Apple "placed significant pressure on

10 InterTAN" to "drop Luxpro's MP3 players from its retail shelves," InterTAN "yanked and

11 destroyed 4500 Luxpro MP3 players" and then stopped placing orders with Luxpro.  (SAC ¶

12 48.)  These facts allege that Luxpro had a business relationship with a probable economic

13 benefit, Apple knowingly and wrongfully interfered with the relationship, and that the

14 relationship ended and Luxpro was harmed as a result.  *See Korea Supply*, 29 Cal. 4th at 1153.

15 Therefore, the Court concludes that Luxpro states a claim for intentional interference with

16 prospective economic advantage with respect to its relationship with InterTAN Canada, Ltd.

17 Accordingly, the Court denies, in part, Apple's motion to dismiss on this basis.

18       In summary, the Court concludes that Luxpro states a claim for intentional interference

19 with prospective economic advantage with respect to its relationships with retailers, distributors

20 and suppliers, as well as Kaga Electronics, Limited, Orchard Co., WebWorker, Carrefour,

21 InterTAN Canada, Ltd.

22       The Court dismisses Luxpro's claims for intentional interference with prospective

23 economic advantage with respect to its relationships with Elecom, Co. Ltd, Japan Airlines,

24 Nikko VC, Seitec Corporation, Beijing Big Boss, Longda Tech., AboCom Systems, Golden

25 View, Co., Ltd., Gajah International, DataPool Systems, Best Buy, Radioshack, Wal-Mart, and

26 Starbucks Corporation, Circuit City Stores, Inc., Bruder Products, Ltd., Fatech Co., Dai-Daichi

27 Denki, TKEC 3C, and ET-Mall TV Shopping.  Because the Court cannot say it would be futile

28

United States District Court

For the Northern District of California

1  to grant leave to amend, the Court grants Luxpro one final opportunity to amend its claims for

2  intentional interference with prospective economic advantage with respect to these companies.

3  **E.**     **Luxpro Fails to State a Claim for Intentional Interference with Contractual**
           **Relations.**

4

5          Apple moves to dismiss Luxpro's claim for intentional interference with contractual

6  relations.  To state a claim for intentional interference with contractual relations, a plaintiff must

7  show: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this

8  contract; (3) the defendant's intentional acts designed to induce breach or disruption of the

9  contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5)

10  resulting damage.  *Luxpro*, 658 F. Supp. 2d at 930-31 (citing *Pac. Gas & Elec. Co. v. Bear*

11  *Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

12          Luxpro fails to state a claim for intentional interference with contractual relations for ten

13  of the eleven entities with which Luxpro alleges it had distribution agreements.  Luxpro alleges

14  that it had distributorship agreements with Tounsen Corporation, Beijing Huaqi Informational

15  Digital Technology Co., Ltd., Beijing Qian Kun Time Digital Technology Co., Ltd., TCL

16  Digital Electronics, Victor Japan, Ltd., Laos Co. Ltd., N.A.K.S. Asia Limited, Funai Europe UK

17  Representative, Keller Trading AB, Boardman Inc., and Twister Sound Pty Ltd., and alleges

18  that these companies all terminated their distribution agreements with Luxpro because of

19  Apple's "illegal conduct."  (SAC ¶ 49.)  Except for Tounsen Corporation, Luxpro does not

20  allege any facts to show that Apple knew of the relationships and intentionally and wrongfully

21  interfered with those relationships.  *See Bear Stearns*, 50 Cal. 3d at 1126.  Luxpro does not

22  allege any facts about how the relationships ended except that the contracts terminated because

23  of Apple's "illegal conduct," a bare legal conclusion.  Therefore, the Court dismisses Luxpro's

24  claims for intentional interference with contractual relations with respect to its relationships

25  with Beijing Huaqi Informational Digital Technology Co., Ltd., Beijing Qian Kun Time Digital

26  Technology Co., Ltd., TCL Digital Electronics, Victor Japan, Ltd., Laos Co. Ltd., N.A.K.S.

27  Asia Limited, Funai Europe UK Representative, Keller Trading AB, Boardman Inc., and

28  Twister Sound Pty Ltd.

1    Accordingly, the Court grants, in part, Apple's motion to dismiss on this basis.

2    However, because the Court cannot say it would be futile to grant leave to amend, the Court

3    grants Luxpro one final opportunity to amend its claims for intentional interference with

4    contractual relations with respect to these companies.

5    Luxpro's allegations regarding Tounsen Corporation are sufficient to state a claim for

6    intentional interference with intentional interference with contractual relations.  Luxpro alleges

7    that it had an existing distribution agreement with Tounsen, but that Apple knowingly forced

8    Tounsen to "drop existing contracts with Luxpro or be subject to legal recourse and also be shut

9    off from access to Apple products."  (SAC ¶ 74.)  These facts are sufficient to state a claim that

10   Luxpro had a contract with Tounsen, Apple knowingly and wrongfully interfered with the

11   relationship, the relationship ended, and Luxpro was harmed as a result.  *See Bear Stearns*, 50

12   Cal. 3d at 1126.  Therefore, the Court concludes that Luxpro states a claim for intentional

13   interference with contractual relations with respect to its relationship with Tounsen Corporation.

14   Accordingly, the Court denies, in part, Apple's motion to dismiss on this basis.

15   **F.     Luxpro Fails to State a Claim for Violation of Section 43(a) of the Lanham Act.**

16   Apple contends that Luxpro's Lanham Act claim fails because Apple's alleged conduct

17   does not constitute "commercial advertising or promotion."  Under the Lanham Act, a party

18   shall be civilly liable for making false or misleading representations in "commercial advertising

19   or promotion."  15 U.S.C. § 1125(a)(1)(B).  A prima facie case under the Lanham Act requires

20   that the plaintiff show:

21           (1) the defendant made a false statement either about the plaintiff's or its own
             product; (2) *the statement was made in commercial advertisement or promotion*;
22           (3) the statement actually deceived or had the tendency to deceive a substantial
             segment of its audience; (4) the deception is material; (5) the defendant caused its
23           false statement to enter interstate commerce; and (6) the plaintiff has been or is
             likely to be injured as a result of the false statement, either by direct diversion of
24           sales from itself to the defendant, or by a lessening of goodwill associated with
             the plaintiff's product.
25

26   *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008)

27   (internal citation omitted) (emphasis added).  "Commercial advertising or promotion" is

28   defined as:

United States District Court

For the Northern District of California

1    (1) commercial speech; (2) by the defendant who is in commercial competition
     with the plaintiff; (3) *for the purpose of influencing consumers to buy defendant's*
2    *goods or services.* While the representations need not be made in a "classic
     advertising campaign," but may consist instead of more informal types of
3    "promotion," the representations (4) must be disseminated sufficiently to the
     relevant purchasing public to constitute "advertising" or "promotion" within that
4    industry.

5    *Id.* at 1054 (internal citation omitted) (emphasis added).  Only misrepresentations that are made

6    in the promotion or marketing of a defendant's product are actionable under the Lanham Act.

7    *See Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003) (holding that statements that

8    were not made in promotion or marketing of a product were not actionable as commercial

9    advertising or promotion).

10          Apple contends that its demand letters do not constitute "commercial advertising or

11   promotion," because they were not designed to influence Luxpro's customers to buy Apple's

12   goods or services.  The Court agrees.  Although Luxpro alleges that Apple's threat letters

13   sought to deter Luxpro's commercial partners from doing business with Luxpro, Luxpro does

14   not allege that Apple tried to persuade the companies to do business with Apple.  *See Zinus Inc.*

15   *v. Simmons Bedding Co.*, 2007 WL 4287391, at *5 (N.D. Cal. Dec. 6, 2007) (concluding that

16   although cease-and-desist letters might have influenced customers to refrain from purchasing

17   plaintiff's product, that alone was not sufficient to state a claim for false advertising under the

18   Lanham Act); s*ee also*, *Futuristic Fences, Inc. v. Illusion Fence Corp.*, 558 F. Supp. 2d 1270,

19   1281 (S.D. Fla. 2008) (citing *Avery Dennison Corp. v. Acco Brands, Inc*., 2000 WL 986995, at

20   *8 (C.D. Cal. Feb. 22, 2000) (concluding that cease-and-desist letters "were sent by [the

21   d]efendants' attorney, not as a marketing and sales tool, but in an attempt to protect [the

22   defendants'] legal rights").  Luxpro does not allege any facts to show that Apple threatened

23   Luxpro's commercial partners to influence them to purchase Apple's products.  Therefore, the

24   Court dismisses Luxpro's false advertising claim.

25          Accordingly, the Court grants, in part, Apple's motion to dismiss on this basis.

26   However, because the Court cannot say it would be futile to grant leave to amend, the Court

27   grants Luxpro one final opportunity to amend its false advertising claim.

28

**United States District Court**
For the Northern District of California

**G.     Luxpro States a Claim for Defamation, But Fails to State a Claim for Trade Libel.**

In its SAC, Luxpro alleges a claim for "commercial disparagement."[5]

> The defamatory torts of libel and slander are different than trade libel.  The difference between the two types of actions is that an action for defamation is designed to protect the reputation of the plaintiff, and the judgment vindicates that reputation, whereas the action for disparagement is based on pecuniary damage and lies only where such damage has been suffered.

*Microtec Research, Inc. v. Nationwide Mut. Ins. Co.*, 40 F.3d 968, 972 (9th Cir. 1994) (internal quotation omitted).  "[T]rade libel and product disparagement are injurious falsehoods that interfere with business.  Unlike classic defamation, they are not directed at the plaintiff's personal reputation, but rather at the goods a plaintiff sells or the character of his other business, as such."  *Guess, Inc. v. Superior Court*, 176 Cal. App. 3d 473, 479 (1986).

Although Luxpro does not specify in the SAC or in its opposing brief whether it claims a cause of action for defamation or trade libel, Luxpro has stated previously that it asserts both claims for relief.  *See Luxpro*, 658 F. Supp. 2d at 934.  The Arkansas District Court dismissed both Luxpro's defamation and trade libel claims because Luxpro failed to specifically identify any disparaging statements made by Apple.  *Luxpro*, 658 F. Supp. 2d at 935.  That court also concluded Luxpro did not state a claim for trade libel because Luxpro did not adequately plead special damages.  *Id*. at 936.

**1.     Luxpro States a Claim for "Business" Defamation.**

Apple argues that Luxpro has not cured the deficiencies in the FAC because it fails to specifically identify any alleged disparaging statements.  In the Ninth Circuit, a claim for product defamation or trade libel must "be based on specific statements, and '[t]he defamatory character of the language must be apparent from the words themselves.'"  *Films of Distinction, Inc. v. Allegro Film Prods., Inc.*, 12 F. Supp. 2d 1068, 1081 n.8 (C.D. Cal. 1998) (quoting *Auvil v. CBS "60 Minutes,"* 67 F.3d 816, 822 (9th Cir. 1995)).  While the exact words do not need to be stated, the substance of the defamatory statement must be alleged.  *Silicon Knights, Inc. v.*

---

[5]     Commercial disparagement is also known as trade libel, product disparagement, or slander of goods.  *See Unelko Corp. v. Rooney*, 912 F.2d 1049, 1057 (9th Cir. 1990); Prosser and Keeton on Torts § 128 (5th ed 1984).

1    *Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1314 (N.D. Cal. 1997) (citing *Okun v. Superior*

2    *Court (Maple Properties)*, 29 Cal. 3d 442, 458 (1981)).

3         Luxpro has cured the deficiencies in the FAC by specifically identifying the allegedly

4    disparaging statements that Apple made.  Luxpro claims that Apple informed Luxpro's various

5    commercial partners that Luxpro's products were "cheap 'knock-offs,'" "cheap copies," and

6    "illegal copies" of Apple's iPod products.  (SAC ¶ 48.)  These claims are specific enough to

7    allege the substance of Apple's disparaging statements.  *See, e.g., Kovesdy v. Kovesdy*, 2010

8    WL 3619826, at *4 (N.D. Cal. Sept. 13, 2010) (denying motion to dismiss where defendant

9    characterized plaintiff as being "unqualified," uncertified," and "unprofessional").  Therefore,

10   the Court finds that Luxpro has cured this defect and sufficiently identifies the substance of the

11   allegedly disparaging statements.

12        With respect to the remaining requirements for a defamation claim, Luxpro alleges

13   sufficient facts to state a cause of action for defamation.  Under California law, "[t]he tort of

14   defamation exists whenever a false and unprivileged statement which has a natural tendency to

15   injure or which causes special damage is communicated to one or more persons who understand

16   its defamatory meaning and its application to the injured party."  *Isuzu Motors Ltd. v.*

17   *Consumers Union of U.S., Inc.*, 66 F. Supp. 2d 1117, 1122 (C.D. Cal. 1999) (internal quotation

18   omitted).  To prevail on a state law defamation claim, a plaintiff must show that the challenged

19   statement "'impl[ies] an assertion of objective fact.'"  *Unelko Corp. v. Rooney*, 912 F.2d 1049,

20   1053 (9th Cir. 1990) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990)) (brackets

21   as in *Unelko*).  Luxpro alleges that Apple published false statements about Luxpro's business,

22   practices, and products.  Apple's alleged statements that Luxpro's products were "cheap

23   'knock-offs,'" "cheap copies," and "illegal copies" of Apple's iPod products imply an assertion

24   of objective fact.  *See Maponics, LLC v. Wahl*, 2008 WL 2788282, at *3-*4 (N.D. Cal. 2008)

25   (concluding that emails sent to counterclaimant's customers allegedly stating that the

26   counterclaimants stole counterdefendant's data and infringed its copyright implied a false

27   assertion of fact).  Therefore, the Court concludes that Luxpro states a claim for defamation.

28        Accordingly, the Court denies, in part, Apple's motion to dismiss on this basis.

**United States District Court**
For the Northern District of California

## 2.       Luxpro Fails to State a Claim for Trade Libel.

Apple argues that Luxpro's claim for trade libel fails because Luxpro has not alleged special damages.  A cause of action for trade libel requires (1) a publication, (2) which induces others not to deal with plaintiff, and (3) special damages.  *See Aetna Cas. & Sur. Co., Inc. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988).  To succeed on a claim for trade libel, a plaintiff must plead and prove special damages in the form of pecuniary loss.  *Luxpro*, 658 F. Supp. 2d at 935 (citing *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc*., 12 F. Supp. 2d 1035, 1047 (C.D. Cal. 1998)).  Under Rule 9(g), "[i]f an item of special damage is claimed, it must be specifically stated."  Fed. R. Civ. P. 9(g).  Although a plaintiff does not need to plead a specific dollar amount, the plaintiff should allege an "'established business, the amount of sales for a substantial period preceding the publication, the amount of sales subsequent to the publication, [and] facts showing that such loss in sales were the natural and probable result of such publication.'"  *Luxpro*, 658 F. Supp. 2d at 935 (quoting *Isuzu Motors*, 12 F. Supp. 2d at 1047).

In the SAC, Luxpro lists its revenues from sales made prior to Apple's alleged interference, but Luxpro does not state any specific facts about losses in sales after Apple took these actions.  Luxpro states generally that it suffered economic loss, including "loss of valuable goodwill," "lost business profits (past, present, and future), [and] loss of working capital and the ability to secure additional capital."  (SAC ¶ 90.)  However, Luxpro's general statements of economic loss do not sufficiently identify special damages.  *See Isuzu Motors*, 12 F. Supp. 2d at 1047 (finding a claim for special damages from "the loss of revenue from wholesale and retail sales of [plaintiff]" inadequate).  Therefore, the Court dismisses Luxpro's trade libel claim.

Accordingly, the Court grants, in part, Apple's motion to dismiss on this basis.  However, because the Court cannot say it would be futile to grant leave to amend, the Court grants Luxpro one final opportunity to amend its trade libel claim.

## H.       Luxpro States a Claim Under Section 17200.

Apple argues that Luxpro fails to state a claim under Section 17200.  Section 17200 prohibits unfair competition, including "any unlawful, unfair or fraudulent business act or

practice." Cal. Bus. & Prof. Code § 17200.  Unfair competition includes "anything that can properly be called a business practice and that at the same time is forbidden by law." *Luxpro*, 658 F. Supp. 2d at 936 (quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co*., 20 Cal. 4th 163, 180 (Cal. 1999)).  An action based on Section 17200 "borrows" violations of other laws and treats them as unlawful practices.  *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).

The "unlawful" prong of Section 17200 prohibits "any practices forbidden by law, be it civil criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994) (internal quotation omitted).  Because the Court has concluded that Luxpro states a claim for defamation, Luxpro's defamation claim may serve as the basis for its Section 17200 claim.  *See Johnson v. JP Morgan Chase Bank DBA Chase Manhattan*, 536 F. Supp. 2d 1207, 1213 (E.D. Cal. 2008) (denying a motion to dismiss a Section 17200 claim based on a sufficient state and federal claims, including a claim for defamation); *Maponics*, 2008 WL 2788282, at *3 (denying a motion to dismiss a Section 17200 counterclaim based on state law tort counterclaims of defamation and tortious interference).  Therefore, the Court concludes that Luxpro states a claim under the "unlawful" prong of Section 17200.

Accordingly, the Court denies, in part, Apple's motion to dismiss on this basis.  The Court's ruling is without prejudice to Apple renewing its arguments regarding the "unfair" and "fraudulent prongs" in a subsequent motion to dismiss, if Luxpro chooses to file a Third Amended Complaint, or on a motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Apple's motion to dismiss and GRANTS Luxpro one final opportunity to amend.  If Luxpro chooses to amend, it shall file its Third Amended Complaint by no later than April 8, 2011.

//

22

1       It is FURTHER ORDERED that the initial Case Management Conference shall be

2  continued from April 1, 2011 to April 22, 2011.  The parties' Joint Case Management

3  Conference Statement shall be due on April 15, 2011.

4       **IT IS SO ORDERED.**

5

6  Dated: March 24, 2011

                                               

7                                       JEFFREY S. WHITE
                                       UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California