Laurence D. King (SBN 206423)
Mario M. Choi (SBN 243409)
KAPLAN FOX & KILSHEIMER LLP
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: 415-772-4700
Facsimile: 415-772-4707
lking@kaplanfox.com
mchoi@kaplanfox.com

Phillip N. Cockrell, *Pro Hac Vice*
Richard A. Adams, *Pro Hac Vice*
Corey D. McGaha, *Pro Hac Vice*
Reid D. Miller, *Pro Hac Vice*
PATTON ROBERTS, PLLC
2900 St. Michael Dr., Suite 400
Texarkana, TX 75503
Telephone: 903-334-7000
Facsimile: 903-334-7007
pcockrell@pattonroberts.com
Richard.adams@pattonroberts.com
cmcgaha@pattonroberts.com
rmiller@pattonroberts.com

Counsel for Plaintiff Luxpro Corporation

[Additional counsel appear on signature block]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUXPRO CORPORATION, a Taiwanese corporation,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC., f/k/a Apple Computer, Inc.,<br><br>Defendant. | Case No.   3:10-cv-03058-JSW<br><br>**PLAINTIFF LUXPRO CORPORATION'S OPPOSITION TO THE MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**<br><br>Date: July 22, 2011<br>Time: 9:00 a.m.<br>Ctrm: 11<br><br>Judge: Hon. Jeffrey S. White |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

STATEMENT OF ISSUES TO BE DECIDED......................................................................iv

SUMMARY OF ARGUMENT.............................................................................................v

I. BACKGROUND.............................................................................................................1

II. ARGUMENT.................................................................................................................2

    A. LUXPRO'S TAC CORRECTS ALL DEFICIENCIES RECITED BY THE
    COURT'S PREVIOUS ORDER.......................................................................................2

        1. Luxpro Plausibly Pleads Claims for Tortious Interference with
        Prospective Economic Advantage with Respect to All Named Entities...............2

        2. Luxpro Plausibly Pleads Claims for Tortious Interference with
        Contractual Relationships With Respect to All Named Entities............................4

        3. Luxpro Plausibly States a Violation of the Lanham Act....................................5

        4. Luxpro's Cal. Bus. & Prof. Code Section 17200 Claim Allows It to
        Seek Restitution and Injunctive Relief.................................................................6

    B. THE COURT SHOULD RECONSIDER ITS PRIOR RULING AND FIND
    THAT THE *NOERR-PENNINGTON* DOCTRINE DOES NOT BAR LUXPRO'S
    CLAIMS.........................................................................................................................7

        1. There Is No Minimum Number of Legal Actions Necessary to
        Constitute a Series or Pattern of Legal Proceedings Under the "Sham"
        Exception to the *Noerr-Pennington* Doctrine.....................................................7

        2. Apple's Multiple Appeals in the Taiwanese Courts Each Constituted a
        Separate Legal Proceeding for the Purpose of Showing a Series or Pattern of
        Baseless Litigation Under the "Sham" Exception.................................................9

        3. Given the Objectively Baseless Nature of Apple's Lawsuits Against
        Luxpro, the Court Should Allow Discovery to Proceed on the Claim
        Related Thereto...................................................................................................12

III. CONCLUSION.............................................................................................................14

# TABLE OF AUTHORITIES

*Amarel v. Connell*, 102 F.3d 1494 (9th Cir. 1995)..............................................................7, 8

*Ashcroft v. Iqbal*, 556 U.S. ____, 129 S. Ct. 1937 (2009)...........................................................1

*Bank of the West v. Superior Court*, 833 P.2d 545 (Cal. 1992)...................................................6

*Bell Atlantic Corp. v. Twombly*,
      550 U.S 544 (2007)...............................................................................................1, 2

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336 (9th Cir. 1996)......................................................9

*California Motor Transport Co. v. Trucking Unlimited*,
      404 U.S. 508 (1972).......................................................................................8, 9, 10, 11

*City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365 (1991).................................9

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*,
      690 F.2d 1240 (9th Cir. 1982)....................................................................................11

*Cloverleaf Enters., Inc. v. Md. Thoroughbred Horsemen's Ass'n, Inc.*,
      730 F. Supp. 2d 451 (D. Md. 2010)..............................................................................13

*Energy Conservation, Inc. v. Heliodyne, Inc.*, 698 F.2d 386 (9th Cir. 1983)..............................12

*ERBE Electromedizin GmbH v. Canady Tech LLC*,
      529 F. Supp. 2d 577 (W.D. Pa. 2007)............................................................................8

*Hoffman-LaRoche, Inc. v. Genpharm, Inc.*, 50 F. Supp. 2d 367 (D.N.J. 1999)...........................13

*Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 691 F.2d 678 (4th Cir. 1982)..................................9, 10, 11

*In re Gabapentin Patent Litig.*, 649 F. Supp. 2d 340 (D.N.J. 2009)..........................................13

*In re Neurontin Antitrust Litig.*, Nos. 02-1830(FSH), 02-2731(FSH), 02-5583(FSH),
      2009 WL 2751029 (D.N.J. Aug. 28, 2009)....................................................................13

*Korea Supply v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003).....................................3, 4, 6

*Landmarks Holding Corp. v. Bermant*, 664 F.2d 891 (2d Cir. 1981).....................................9, 10

*Lee v. City of Los Angeles*, 250 F.3d 688 (9th Cir. 2001).........................................................13

*Livingston Downs Racing Ass'n Inc. v. Jefferson Downs Corp.*,
      192 F. Supp. 2d 519 (M.D. La. 2001)..................................................................8, 10, 11

*Luxpro Corp. v. Apple, Inc.*, 658 F. Supp. 2d 921 (W.D. Ark. 2009)..........................................2

ii

*Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961) .................................................................................*passim*

*United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965)................................*passim*

*Or. Natural Res. Council v. Mohla*, 944 F.2d 531 (9th Cir. 1991)...................................... 10

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118 (1990)........................................ 4, 5

*Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490 (2003)........................................ 6

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
  508 U.S. 49 (1993)........................................................................... 12

*School District No. IJ, Multnomah, Or. v. ACandS, Inc.*, 5 F.3d 1255 (9th Cir. 1993)  ............... 7

*USS-POSCO Indus. v. Contra Costa County Bldg. & Const. Trades*,
  31 F.3d 800 (9th Cir. 1994)..................................................................8, 11

## **STATUTES AND RULES**

15 U.S.C. § 1125(a)(1)(B)................................................................................... 5

Cal. Bus. & Prof. Code § 17200, *et seq.* ..........................................................6

Fed. R. Civ. P. 12(b),  12(b)(6)..........................................................................9

Fed. R. Civ. P. 54(b)........................................................................................ 6

Local Rule 7-9................................................................................................ 2

iii

## STATEMENT OF THE ISSUES TO BE DECIDED

1.      Does Luxpro Corporation's Third Amended Complaint ("TAC") state a plausible claim for tortuous interference with business expectancies and contractual relations as to certain specifically named entities?

2.      Does Luxpro's TAC state a plausible claim for a violation of the Lanham Act?

3.      Is Luxpro entitled to relief available under Cal. Bus. & Prof. Code § 17200?

4.      Should the Court reconsider its previous ruling that some of Luxpro's claims are barred by the *Noerr-Pennington* doctrine?

iv

## SUMMARY OF ARGUMENT

Luxpro Corporation ("Luxpro") is a Taiwanese corporation that develops, manufactures, distributes and sells MP3 players throughout the world. Apple Inc. ("Apple"), an enormously successful corporation, developed an illegal scheme to discredit, disparage and destroy Luxpro's business and reputation.

The Court's March 24, 2011 Order sustained many of Luxpro's claims for tortious interference, commercial disparagement, and violations of Cal. Bus. & Prof. Code § 17200. The Court gave Luxpro the opportunity to file a Third Amended Complaint ("TAC") addressing some of its tortious interference claims, violations of the Lanham Act, 15 U.S.C. § 1125(a), and trade libel.

While the Court has already allowed Luxpro to identify third-party interference claims by referencing groups of its business partners, the TAC now identifies (1) Apple's specific wrongful acts (disparaging remarks about Luxpro's business and products and threatened boycotts) that interfered with Luxpro's prospective economic advantages and contracts, (2) Apple's specific disruption of contractual relationships as to certain specific entities and business partners, and (3) Apple's knowledge of the contractual and business relationships between Luxpro and specific business partners.

The TAC also shows how Apple finally influenced Luxpro's business partners to deal with Apple, exclusive of Luxpro, a violation of the Lanham Act. Those allegations more than adequately address the Court's concern that Luxpro had not sufficiently alleged that Apple tried to persuade the companies to do business with Apple to the exclusion of Luxpro.

Lastly, the Court should reconsider its previous decision that the *Noerr-Pennington* doctrine bars some of Luxpro's claims, and Luxpro respectfully seeks leave of the Court for reconsideration of its prior ruling on *Noerr-Pennington* pursuant to Fed. R. Civ. P. 54(b).

## I. BACKGROUND

Luxpro Corporation ("Plaintiff" or "Luxpro") has taken the Court's direction in correcting the deficiencies the Court found in the Second Amended Complaint. Given the extensive briefing on the prior motion to dismiss and the Court's previous discussion of *Twombly's* plausible pleading standard, repetition of that standard is not necessary here.[1]   Defendant Apple Inc. ("Defendant" or "Apple"), however, now attempts to improperly overlap the well-settled plausibility standard with hearsay evidentiary rules. The Court should ignore Apple's argument that to sustain its complaint, Luxpro may not rely upon statements made to it by those in the industry with knowledge of Apple's threats. *Twombly* only requires Luxpro to "nudge their claims across the line from conceivable to plausible."[2]   Since Luxpro's Third Amended Complaint ("TAC") addresses each of the Court's concerns, Luxpro requests the Court sustain all of its claims as "plausible" under *Twombly*. Specifically, the TAC identifies (1) Apple's specific wrongful acts (disparaging remarks about Luxpro's business and products and threatened boycotts) that interfered with Luxpro's prospective economic advantages and contracts, (2) Apple's specific disruption of contractual relationships as to certain specific entities and business partners, (3) Apple's knowledge of the contractual and business relationships between Luxpro and specific business partners, and (4) how Apple influenced Luxpro's business partners with threatened boycotts to do business with Apple to the exclusion of Luxpro.

Secondly, Luxpro asks the Court to reconsider that its claims regarding Apple's harassing litigation tactics are not barred by *Noerr-Pennington* doctrine. Luxpro respectfully submits that Apple's pursuit of foreign litigation against Luxpro constitutes a series or pattern of legal proceedings under the "sham" exception to the *Noerr-Pennington* doctrine. This pattern includes filing foreign lawsuits in Germany and Taiwan, its complaint filed with the Taiwanese Fair Trade

---

[1] *See* Dkt. No. 166, Order Granting in Part and Denying in Part Defendant's Motion to Dismiss the Second Amended Complaint, at pp. 3-4 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[2] *Twombly*, 550 U.S. at 570; *Ashcroft v Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555).

Commission, and its multiple appeals filed in Taiwanese courts and at the Fair Trade Commission. Further, the Court never considered that Apple's complaint with the Taiwanese Fair Trade Commission and each of its multiple appeals constituted a single instance of "sham" litigation. To the extent the Court requires Luxpro to formally request reconsideration, Luxpro hereby requests leave of Court to do so for the reasons set forth herein pursuant to Local Rule 7-9. The Court *has* already ordered that Apple is *not* immune under *Noerr-Pennington* regarding Apple's threats and coercion toward Luxpro's commercial business partners where a lawsuit was not threatened and intellectual property rights were not mentioned.

## II. ARGUMENT

### A. LUXPRO'S TAC CORRECTS ALL DEFICIENCIES RECITED BY THE COURT'S PREVIOUS ORDER

#### 1.   Luxpro Plausibly Pleads Claims for Tortious Interference with Prospective Economic Advantage With Respect to All Named Entities.

The Court has already ruled that Luxpro may identify third-party groups such as its retailers, distributors and suppliers and satisfy the pleading requirements for a tortious interference claim. Therefore, the vast majority of Luxpro's claims for tortious interference have already been sustained.[3] Luxpro's claims as a whole clearly allege a campaign of unlawful attacks by Apple. Luxpro additionally has cured any specific defects pointed out by the Court in its previous order granting Luxpro leave to amend its tortious interference claims.

For instance, with respect to Elecom Co. Ltd. and Japan Airlines, Luxpro alleges that because of Apple's threats, these entities would not do business with Luxpro.[4] Additionally, Apple disparaged Luxpro's business and products to Elecom, telling Elecom that if it purchased Luxpro's MP3 players, it could not do business with Apple.[5] Elecom ceased purchasing Luxpro products

---

[3] Dkt. 166 at 11-12.; *see also Luxpro Corp. v. Apple, Inc.*, 658 F. Supp. 2d 921, 931-32 (W.D. Ark. 2009)(citing *Twombly*, 550 U.S. at 570).

[4] Luxpro's Third Amended Complaint, Dkt. 168, ¶¶ 53, 55.

[5] *Id.*

2

due to the disparaging remarks and threatened boycott.[6]  Similarly, after Japan Airlines had expressed interest in Luxpro's products and sample products had been made and delivered, Japan Airlines cancelled its product campaign using Luxpro's products at around the same time Luxpro's existing retailers and distributors stopped ordering Luxpro's MP3 players, as reported by Tounsen.[7]  Luxpro's allegations that Elecom and Japan Airlines ceased its business with Luxpro due to Apple's disparagement and threatened boycott are independent wrongful acts the Court ruled fall outside of *Noerr-Pennington*.[8]  Since Luxpro's TAC cures the Court's only concern that Luxpro did not adequately allege an actual disruption of an existing relationship, Luxpro now states a plausible claim for tortious interference with a prospective economic advantage.[9]

Apple's disparaging remarks and threatened boycotts also caused a loss of investment capital.  Nikko VC expressed great interest in investing capital in Luxpro, until Nikko VC backed out of any investment at around the same time Luxpro's other retailers and distributors stopped doing business with Luxpro.[10]  Additionally, other investors, Neuberger Berman, LLC and Ant Capital Partners Co., Ltd., showed great interest in Luxpro's products, until they learned of Apple's campaign against Luxpro.[11]  All three investment capital firms then refused to invest with Luxpro.  Luxpro's TAC clearly shows it lost its prospective economic advantage because of an independent wrongful act – Apple's disparaging comments and threatened boycotts to each.[12]

With respect to Seitec Corporation, Beijing Big Boss, Longda Tech., AboCom Systems, Golden View, Co., Ltd., Gajah International, DataPool Systems, Best Buy, Radioshack, Wal-Mart, Starbucks Corporation, Circuit City Stores, Bruder Products, Ltd., Fatech Co., Dai-Daichi Denki,

---

[6] *Id.*

[7] *Id.*

[8] Dkt. 166 at  13.

[9] *See Korea Supply v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158 (2003).

[10] Dkt. 168 at ¶ 59.

[11] *Id.*

[12] *See Korea Supply*, 29 Cal. 4th at 1158.

TKEC 3C, and ET-Mall TV Shopping, Luxpro had already sold millions of dollars of products to these entities.[13]   An existing, profitable relationship was ongoing between Luxpro and each of these entities prior to Apple's disparaging remarks about Luxpro and its threatened boycotts.  The relationship between Luxpro and each of these entities ended after Apple made its disparaging marks to each and threatened to boycott each of these entities.  Luxpro's relationship with each was not only disrupted, but was terminated, because of Apple's independent wrongful acts.  As set forth above and in Luxpro's TAC, Luxpro more than addressed the Court's concerns that Luxpro did not adequately plead either an independent wrongful act or a disruption of the relationship caused by Apple's conduct.[14]

### 2.    Luxpro Plausibly Pleads Claims for Tortious Interference with Contractual Relationships With Respect to All Named Entities.

In its previous order, the Court found that Luxpro failed to state a claim for breach of contractual relationships with ten (10) named entities with which it had distributorship agreements because Luxpro did not allege facts to show that Apple knew of the existence of the relationship between Luxpro and these entities and that Apple intentionally and wrongfully ended these relationships.[15]   Luxpro's TAC addresses the Court's concerns.[16]   These ten entities stopped doing business with Luxpro due to Apple's threats to not do business with them if they continued to do business with Luxpro, and Apple directly disparaged Luxpro and its products to each.[17]   Apple, therefore, knew of the existence of the relationships between Apple and these distributors and threatened an illegal boycott to each.  Luxpro's TAC more than adequately addresses the Court's concerns about Apple's knowledge of Luxpro's relationships with its distributors and Apple's intentional and wrongful conduct to end each relationship.  Luxpro has pled a plausible claim for

---

[13] Dkt. 168 at ¶¶ 30-34, 75, 78.

[14] See Korea Supply, 29 Cal. 4th at 1158.

[15] Dkt. 166 at 16-17.

[16] See Pac. Gas & Elec. Co. v. Bear Stearns & Co., 50 Cal. 3d 1118, 1126 (1990).

[17] Dkt. 168 at ¶ 78.

tortious interference with contractual relations.[18]

### 3. Luxpro Plausibly States a Violation of the Lanham Act.

In its previous Order, the Court dismissed Luxpro's claim for violation of the Lanham Act[19] because Luxpro did not allege that Apple tried to persuade Luxpro's business partners to do business with Apple.[20]   Luxpro's claims for a Lanham Act violation do not merely focus on any demand letters from Apple.  Luxpro's claim that Apple violated the Lanham Act also incorporate Apple's disparaging remarks about its business and products and Apple's threatened boycotts.[21] The threatened boycotts are particularly relevant to the Lanham Act claim because of the Court's concern that Apple did not try to persuade Luxpro's business partners to do business with Apple. To the contrary, Apple's threatened boycott informed Luxpro's business partners that they could not do business with both Apple and Luxpro.  Apple's majority of market share in the MP3 player market forced Luxpro's business partners to do business with Apple to the exclusion of Luxpro. Apple, at a minimum, "influenced" these business partners' decisions to do business with Apple to the exclusion of Luxpro.[22]  For example, Apple approached Tounsen, who had been distributing Luxpro's products since 2003, with false statements about Luxpro's business and products and a threatened boycott of Apple products.[23]  Apple would not allow Tounsen to sell both Luxpro's and Apple's products, which caused Tounsen to eventually terminate its relationship with Luxpro.[24] Apple did indeed succeed in its attempt to influence Tounsen to sell Apple's products to the

---

[18] *Bear Stearns & Co.*, 50 Cal. 3d at 1126.

[19] 15 U.S.C. § 1125(a)(1)(B).

[20] Dkt. 166 at 18 (internal citations omitted).

[21] Dkt. 168 at ¶¶ 68, 78

[22] Dkt. 166 at 18.

[23] Dkt. 168 at ¶ 78.

[24] *Id.*

5

exclusion of Luxpro.[25]  Apple also successfully influenced a number of other named distributors, by false statements and threatened boycotts, to sell Apple's products to the exclusion of Luxpro.[26]

### 4. Luxpro's Cal. Bus. & Prof. Code Section 17200 Claim Allows It to Seek Restitution and Injunctive Relief.

The Court has already ruled that Luxpro adequately pled a claim for relief under Section 17200,[27] which broadly prohibits "any unlawful, unfair or fraudulent business act or practice."[28] Luxpro's TAC alleges that it had a vested interest under its existing distribution agreements before Apple's threats and disparaging comments caused the business relationships to end.[29]  Restitution under § 17200 is available for money or property in which a plaintiff has a vested interest.[30]  The monies Luxpro seeks from Apple flow from existing contracts and distribution agreements, some of which had been in existence for years prior to Apple's conduct of threats and disparaging remarks.  Luxpro, therefore, had a vested interest in this money under the existing contracts and distributorship agreements, and section 17200 provides a remedy for recovery against Apple in the form of restitution.

Lastly, Luxpro alleges that it is entitled to injunctive relief to keep Apple from continuing all its unfair trade practices, including making false and misleading statements about Luxpro and continuing its illegal conduct.[31]  Luxpro's allegations and requests for injunctive relief that would put an end to Apple's conduct with respect to Luxpro should be sustained at this juncture -  the pleading stage of this litigation.

---

[25] *Id.*

[26] *Id.*

[27] Dkt. 166 at 21-22.

[28] Cal. Bus. & Prof. Code  § 17200; *Bank of the West v. Superior Court*, 833 P.2d 545, 553 (Cal. 1992); *Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003).

[29] Dkt. 168 at ¶¶ 82-86, 95.

[30] *Korea Supply*, 29 Cal. 4th at 1149.

[31] Dkt. 168 at ¶¶ 85, 95.

**B.   THE COURT SHOULD RECONSIDER ITS PRIOR RULING AND FIND THAT THE** *NOERR-PENNINGTON* **DOCTRINE DOES NOT BAR LUXPRO'S CLAIMS.**

The Court previously ruled that the *Noerr-Pennington* doctrine does not completely protect Apple's conduct as described in Luxpro's Second Amended Complaint.  Since a new complaint is now before the Court, Luxpro respectfully asks the Court to reconsider its ruling that the *Noerr-Pennington* doctrine protects Apple's pursuit of litigation against Luxpro.  Fed. R. Civ. P. 54(b) allows the Court to reconsider any order that adjudicates fewer than all the claims of all the parties at any time prior to the entry of a final judgment.  Luxpro respectfully submits the Court committed clear error in its previous *Noerr-Pennington* analysis and that the Court's previous ruling is manifestly unjust to Luxpro.  Both "clear error" and "manifestly unjust" are grounds for reconsideration recognized by the Ninth Circuit.[32]   If the Court requires a formal motion for reconsideration, Luxpro file will such a motion.

### 1.  There Is No Minimum Number of Legal Actions Necessary to Constitute a Series or Pattern of Legal Proceedings Under the "Sham" Exception to the *Noerr-Pennington* Doctrine.

The Court refused to apply the "sham" exception to the *Noerr-Pennington* doctrine based on its finding that "Apple's two foreign lawsuits and its complaint filed with the Taiwanese Fair Trade Commission do not constitute a 'series of lawsuits.'"[33]  In so doing, the Court found, as a matter of law, that a defendant's filing of three legal actions could never constitute a series or pattern of baseless litigation.[34]  However, numerous courts, including the Ninth Circuit, have expressly refused to prescribe a minimum number of legal actions that must be pursued in order to

---

[32] *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) ("Reconsideration is appropriate if the district court … committed clear error or the initial decision was manifestly unjust ….").

[33] Dkt. No. 166 at 8 (citation omitted).

[34] *See id.* (citing *Amarel v. Connell*, 102 F.3d 1494, 1519 (9th Cir. 1997) (holding that two lawsuits was not "'a whole series of legal proceedings'" or a "'pattern of baseless, repetitive claims'")).

7

constitute a series or pattern of legal proceedings under the "sham" exception to the *Noerr-Pennington* doctrine.[35]

Indeed, such a bright-line rule would undermine the purpose of the series or pattern prong of the "sham" exception. As noted by the Supreme Court, the line distinguishing a single baseless claim from a pattern of baseless claims may be a difficult one to draw.[36] But the Supreme Court made clear that the line exists to prohibit companies, like Apple, from preventing potential competition by invoking the processes of the administrative agencies and courts.[37] Indeed, the Ninth Circuit warned that the filing of a whole series of baseless proceedings can deliver a crushing blow to businesses.[38] The bright-line rule imposed by the Court fails to take into account that it will take far less harassment to discourage or injure a small company with limited resources, like Luxpro, than a large multinational corporation, such as Microsoft Corporation.

While Apple's illegal conduct may have not discouraged or injured a larger corporation, it certainly had such an effect on Luxpro. Apple knew that if it held a cloud of litigation above Luxpro's head for a few years that: (1) Apple would acquire a monopoly position in the market; (2) Luxpro, being so small, would lose its chance or window of opportunity to exploit the market;[39] and (3) the long term damage to Luxpro's business would be unavoidable and permanent. By filing its baseless lawsuit in Taiwan, tendering its complaint to the Taiwanese Fair Trade Commission, and seeking multiple appeals, Apple successfully delivered a crushing blow to Luxpro's business, causing Luxpro to lose valuable market opportunities and an enormous amount

---

[35] *See, e.g., Amarel*, 102 F.3d at 1519 ("[W]e do not attempt to define here the number of legal proceedings needed to allege a 'series' or 'pattern' of litigation . . . .") (citation omitted); *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 192 F. Supp. 2d 519, 539 (M.D. La. 2001); *ERBE Electromedizin GmbH v. Canady Tech. LLC*, 529 F. Supp. 2d 577, 594 (W.D. Pa. 2007).

[36] *See Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 512 (1972).

[37] *See id.*

[38] *USS-POSCO Indus. v. Contra Costa County Bldg. & Const. Trades Council*, 31 F.3d 800, 810 (9th Cir. 1994) ("Litigation is invariably costly, distracting and time-consuming; having to defend a whole series of such proceedings can inflict a crushing burden on a business.").

[39] *See* Dkt. 62 at ¶¶ 44-45.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
THIRD AMENDED COMPLAINT

10-cv-03058-JSW

of product orders.[40]  Indeed, Apple's pattern of sham litigation and misrepresentations ultimately destroyed Luxpro's business.[41]  Because this is just the sort of conduct sought to be prevented by the series or pattern exception, the Court erroneously concluded that Luxpro could not demonstrate this prong of the "sham" exception to the *Noerr-Pennington* doctrine.[42]  In the context of a Rule 12(b) motion, this well-pleaded allegation must be accepted as true by the Court.[43]

### 2. Apple's Multiple Appeals in the Taiwanese Courts Each Constituted a Separate Legal Proceeding for the Purpose of Showing a Series or Pattern of Baseless Litigation Under the "Sham" Exception.

The Court also erroneously refused to count Apple's multiple appeals in the Taiwanese courts as separate legal proceedings in determining whether Apple engaged in a series or pattern of baseless litigation under the "sham" exception.  The exception "encompasses situations in which persons use the governmental process itself -- as opposed to the *outcome* of that process -- as an anticompetitive weapon."[44]  As noted by the Supreme Court, "[a] classic example is the filing of frivolous objections to the license application of a competitor, with no expectation of achieving denial of the license but simply in order to impose expense and delay."[45]  Notably, baseless appeals, brought for the sole purpose of delay, have always been sufficient to demonstrate the "sham" exception to the *Noerr-Pennington* doctrine.[46]  Indeed, courts have held that a defendant cannot be immune from antitrust liability if the proof established that he or she was engaged in

---

[40] *See id.* at ¶ 47.

[41] *See id.* at ¶¶ 62-63.

[42] *See Cal. Motor Transp.*, 404 U.S. at 512; *USS-POSCO*, 31 F.3d at 810.

[43] *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).

[44] *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 380 (1991).

[45] *Id.*

[46] *See Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 691 F.2d 678, 687-88 (4th Cir. 1982) ("We believe that appellants are not immune from antitrust liability if the proof establishes they were engaged in a baseless appeal to the Superior Court of Wake County with intent to delay approval of HBC's application for a certificate of need and thereby delay its entrance into the Raleigh market."); *Landmarks Holding Corp. v. Bermant*, 664 F.2d 891, 896-97 (2d Cir. 1981) (holding that defendants' multiple state court appeals qualified under the "sham" exception to the *Noerr-Pennington* doctrine).

9

baseless appeals to state courts, thus preventing the plaintiff's ability to timely enter the market.[47]

Where a monopolist files such a baseless appeal, it is indistinguishable from the filing of a successive lawsuit. There exists a palpable risk that the monopolist will "deprive the competitors of meaningful access to the agencies and courts."[48] This risk was highlighted in the context of a defendant's intervention in a preexisting lawsuit:

> The Court is mindful of the significant distinction between initiating a lawsuit and merely intervening in a lawsuit that has already been filed. The former behavior poses a far greater opportunity for the defendant to impose economic injury upon a rival. This is because, in the latter instance, the rival has already undertaken the costs and risks that attend litigation. *Yet if the key to the application of the sham exception is the abuse of the adjudicatory process, as the Supreme Court has suggested, see California Motor, 404 U.S. at 513, 92 S. Ct. 609, then there remains a palpable risk that parties, though only intervenors, can pervert the machinery of the courts to harass rivals who are already there.*[49]

Indeed, the *Livingston* court found that the defendant's unsuccessful appeals of unfavorable rulings, which prolonged the litigation well beyond its normal terminus, "illustrate[d] how such abuse might be carried out."[50] Thus, the *Livingston* court counted the defendant's four unsuccessful appeals as separate legal actions in finding that the plaintiff demonstrated a series or pattern of baseless litigation under the "sham" exception.[51]

In contrast, the Court ignored Luxpro's allegations that Apple initiated multiple baseless appeals in the Taiwanese courts, including its multiple appeals of the Taiwanese District Court's reversal of the injunction and its appeal of the Taiwanese Fair Trade Commission's ruling.[52] Both

---

[47] *See Hosp. Bldg.*, 691 F.2d at 687; *Landmarks Holding*, 664 F.2d at 896-97. *But cf. Or. Natural Res. Council v. Mohla*, 944 F.2d 531, 534 (9th Cir. 1991) (holding that the filing of earlier administrative appeals is relevant only to the extent that they demonstrate the defendant was improperly motivated in filing a later lawsuit).

[48] *See Cal. Motor Transp.*, 404 U.S. at 512.

[49] *Livingston Downs Racing Ass'n*, 192 F. Supp. 2d at 539 n.19 (emphasis added).

[50] *Id.*

[51] *Id.* at 539 & n.19.

[52] Dkt. No. 62 at ¶¶ 42, 45-46.

10

1  of these unsuccessful appeals resulted in delays causing Luxpro to lose valuable market
2  opportunities and an enormous amount of product orders and eventually aided in significantly
3  damaging Luxpro's business.[53]   Because this is just the type of abuse of the judiciary process
4  sought to be prevented by the Supreme Court's decision in *California Motor Transport*, the Court
5  should have counted Apple's baseless appeals as separate legal actions for the purpose of showing
6  a series or pattern of baseless litigation under the "sham" exception.[54]   It is of little significance
7  that the initial, preliminary outcome of the foreign lawsuit was in Apple's favor because the
8  question is not whether any one of them has merit.[55]   This is especially true where, as here,
9  Apple's "victory" in Taiwan was artificial, short-lived, and will ultimately prove to be pyrrhic.
10  Even so, if the Court had properly counted each proceeding separately, Apple's "batting average"
11  would have just been well below 50 percent—a far cry from the situation in *USS-POSCO*.[56]

12      It is well settled that the "sham" exception to the *Noerr-Pennington* doctrine can be based
13  on a single lawsuit and does not require a series or pattern of baseless litigation.[57]   It can arise from
14  a lawsuit, an administrative petition, or an appeal.[58]   In such a case, a conventional analysis is

15

16  [53] *Id.* at ¶¶ 47 ("These threats, misrepresentations, and the delays caused by Apple's sham litigation
17  strategy caused Luxpro to lose valuable market opportunities and an enormous amount of product
   orders that would have flowed to Luxpro naturally from its established market acceptance and the
18  product demand that Luxpro's products had generated in the past."), ¶¶ 61-63.

19  [54] *See Cal. Motor Transp.*, 404 U.S. at 512; *Livingston Downs Racing Ass'n*, 192 F. Supp. 2d at 539
   & n.19.

20  [55] *See USS-POSCO*, 31 F.3d at 811 ("When dealing with a series of lawsuits, the question is not
   whether any one of them has merit—some may turn out to, just as a matter of chance—but whether
21  they are brought pursuant to a policy of starting legal proceedings without regard to the merits and
   for the purpose of injuring a market rival."); *see also Livingston Downs Racing Ass'n*, 192 F. Supp.
22  2d at 538 ("Because the focus of the inquiry is the defendant's intent in filing the lawsuits, it is
   irrelevant in this context that some of the suits prove not to be frivolous. This may be the case 'just
23  as a matter of chance.'") (citation omitted).

24  [56] *Id.* ("Given that the plaintiff has the burden in litigation, a batting average exceeding .500 cannot
   support BE & K's theory [of a pattern or series of baseless claims.]").
25
26  [57] *See Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1255 (9th Cir.
   1982) ("[I]t is unnecessary to allege and prove more than the institution of a single suit or protest to
27  invoke the sham exception.").

28  [58] *See id.*; *see also Hosp. Bldg.*, 691 F.2d at 687.

applied, requiring the Court to consider whether (1) the lawsuit is objectively baseless such that no reasonable litigant could realistically expect to succeed on the merits, and (2) it is the subjective intent of the litigant to interfere directly with the business relationships of the competitor.[59] Despite the fact that Luxpro specifically argued that Apple's baseless litigation conduct satisfied this conventional analysis in its opposition to the motion to dismiss,[60] the Court only considered whether the conventional analysis applied to Apple's filing of lawsuits in Germany and Taiwan.[61] Because Luxpro sufficiently alleged that Apple's filing of its complaint with the Taiwanese Fair Trade Commission and its multiple appeals were both objectively baseless and done so with the subjective intent to interfere directly with Luxpro's business, the Court should have found that they each constitute a single instance of "sham" litigation warranting an exception to the *Noerr-Pennington* doctrine.[62]

### 3. Given the Objectively Baseless Nature of Apple's Lawsuits Against Luxpro, the Court Should Allow Discovery to Proceed on the Claims Related Thereto.

Courts normally apply a "rigorous standard of review . . . to dismissals of antitrust complaints."[63] The standard is especially appropriate in such cases because proof is often in the hands of the alleged conspirators. Although courts may be more critical when reviewing complaints that invoke the "sham" exception to the *Noerr-Pennington* doctrine, "it is a question of fact in each instance whether an action is a genuine attempt to influence governmental action or is a mere sham."[64] Thus, where a plaintiff alleges facts that may be sufficient to support a claim under the "sham" exception, it should not be dismissed without the benefit of discovery of matters

---

[59] *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61(1993).

[60] Dkt. No. 154 at 11-12.

[61] Dkt. No. 166 at 7.

[62] Dkt. No. 62 at ¶¶ 42-48, 61-63.

[63] *Energy Conservation, Inc. v. Heliodyne, Inc.*, 698 F.2d 386, 389 (9th Cir. 1983).

[64] *Id.*

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
THIRD AMENDED COMPLAINT

10-cv-03058-JSW

1  pertinent to the genuineness of the lawsuit.[65]  Indeed, courts routinely deny motions to dismiss and

2  allow parties to obtain discovery on claims related to the "sham" exception, especially where the

3  predicate facts of a sham lawsuit are disputed.[66]

4      For instance, in *In re Neurontin Antitrust Litigation*, the plaintiff's complaint alleged that

5  the defendant had an aggressive policy of filing infringement cases that were objectively baseless

6  and intended solely to illegally extend the defendant's monopoly by delaying the entrance of

7  generic manufacturers into the market.[67]  In response, the defendant argued that, as a matter of law,

8  the plaintiff could not show that the lawsuits were objectively unreasonable, pointing to various

9  favorable findings and summary-judgment outcomes in the underlying actions.[68]  Yet, the district

10  court declined to entertain the defendant's argument on a motion to dismiss, finding that "when the

11  predicate facts of an allegedly sham lawsuit are disputed, sham litigation claims should not be

12  decided by the court as a matter of law."[69]

13      Notably, that court refused to look to other courts' rulings on matters such as sanctions and

14  attorneys' fees to ascertain whether the defendant's lawsuit was objectively baseless.[70]  Rather, it

15  noted that the determination involves the consideration of a number of factors, including "whether

16  [the plaintiff] undertook a reasonable investigation before filing suit, whether [the plaintiff] knew

17  or should have known that [the defendant] had not infringed [its] patents, and whether a reasonable

18  litigant could have realistically expected success on the merits at the time the suit was filed."[71]

19

---

20  [65] *Id.*

21  [66] *See Cloverleaf Enters., Inc. v. Md. Thoroughbred, Horsemen's Ass'n, Inc.*, 730 F. Supp. 2d 451,
22  466 (D. Md. 2010); *In re Gabapentin Patent Litig.*, 649 F. Supp. 2d 340, 363-64 (D.N.J. 2009).

23  [67] *In re Neurontin Antitrust Litigation*, Nos. 02-1830(FSH), 02-2731(FSH), 02-5583(FSH), 2009
   WL 2751029, at *21 (D.N.J. Aug. 28, 2009).

24  [68] *Id.* at *21 n.46.

25  [69] *Id.*

26  [70] *Id.* at *22; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).

27  [71] *Neurontin*, 2009 WL 2751029, at *23 (quoting *Hoffman-La Roche, Inc. v. Genpharm, Inc.*, 50 F.
28  Supp. 2d 367, 380 (D.N.J. 1999)).

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS                     10-cv-03058-JSW
THIRD AMENDED COMPLAINT

1  Because such issues of reasonableness were questions of fact, the court found that it was improper

2  to resolve them in the context of a motion to dismiss.[72]  This Court should allow Luxpro the same

3  opportunity.

### III. CONCLUSION

4  

5      For the foregoing reasons, the Court should deny Apple's Motion to Dismiss the Third

6  Amended Complaint in its entirety, and, further, should reconsider its ruling on the issue of the

7  *Noerr-Pennington* doctrine.

8  

9  Dated: June 21, 2011                    Respectfully submitted,

10                          /s/ Mario M .Choi

Laurence D. King

11  Mario M. Choi
KAPLAN FOX & KILSHEIMER LLP

12  350 Sansome Street, Suite 400
San Francisco, CA  94104

13  Telephone:  415-772-4700
Facsimile:  415-772-4707

14  lking@kaplanfox.com
mchoi@kaplanfox.com

15  

Donald R. Hall, *Pro Hac Vice*

16  KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor

17  New York, NY 10022
Telephone:  212-687-1980

18  Facsimile:  212-687-7714
dhall@kaplanfox.com

19  

Phillip N. Cockrell, *Pro Hac Vice*

20  Richard A. Adams, *Pro Hac Vice*
Corey D. McGaha, *Pro Hac Vice*

21  Reid D. Miller, *Pro Hac Vice*
PATTON ROBERTS, PLLC

22  2900 St. Michael Dr., Suite 400
Texarkana, TX  75503

23  Telephone:  903-334-7000
Facsimile:  903-334-7007

24  pcockrell@pattonroberts.com
Richard.adams@pattonroberts.com

25  cmcgaha@pattonroberts.com
rmiller@pattonroberts.com

26  

27  _____

28  [72] *Id.* at *23.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS          10-cv-03058-JSW
THIRD AMENDED COMPLAINT

James R. Jackson, *Pro Hac Vice*
Jeremy Y. Hutchinson, *Pro Hac Vice*
PATTON ROBERTS, PLLC
111 Center St., Suite 1315
Little Rock, AR  72201
Telephone:   501-372-3480
Facsimile:    501-372-3488
jjackson@pattonroberts.com
jhutchinson@pattonroberts.com

Patrick J. Conroy, *Pro Hac Vice*
Glenn E. Janik, *Pro Hac Vice*
Theresa M. Dawson, *Pro Hac Vice*
Daniel F. Olejko, *Pro Hac Vice*
SHORE CHAN BRAGALONE DEPUMPO LLP
901 Main Street, Suite 3300
Dallas, TX  75202
Telephone:   214-593-9110
Facsimile:    214-593-9111
pconroy@shorechan.com
ghanik@shorechan.com
tdawson@shorechan.com
dolejko@shorechan.com

Counsel for Plaintiff Luxpro Corporation

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
THIRD AMENDED COMPLAINT

10-cv-03058-JSW