**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUXPRO CORPORATION, a Taiwanese corporation,<br><br>  Plaintiff,<br><br>  v.<br><br>APPLE INC. f/k/a Apple Computer, Inc.,<br><br>  Defendant. | No. C 10-03058 JSW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT** |

**INTRODUCTION**

This matter comes before the Court upon consideration of the Motion to Dismiss Plaintiff Luxpro Corporation's ("Luxpro") Third Amended Complaint, filed by Defendant Apple Inc. ("Apple"). Having considered the parties' papers, the relevant legal authority, the record in this case, and having had the benefit of oral argument, the Court HEREBY GRANTS IN PART AND DENIES IN PART Apple's motion to dismiss.

**BACKGROUND**

On March 24, 2011, the Court granted in part and denied in part Apple's motion to dismiss Luxpro's Second Amended Complaint, and it granted Luxpro a final opportunity to amend its claims to remedy the defects identified by the Court. (*See* Docket No. 166 ("March 24 Order").) In the March 24 Order, the Court set forth the facts underlying this dispute, and it shall not repeat them herein, except as necessary to the analysis.

Apple now moves to dismiss Luxpro's Third Amended Complaint ("TAC") on the basis that Luxpro has not cured the defects previously identified by the Court and on the basis that Luxpro fails to state a claim for relief. Apple also moves to dismiss Luxpro's claim for violations of California Business and Professions Code §§ 17200, *et seq.* on the basis that Luxpro is not entitled to restitution or injunctive relief.

**ANALYSIS**

**A.   Luxpro's Request for Reconsideration is Denied.**

In its opposition to Apple's motion, Luxpro asks the Court to revisit its ruling that the *Noerr-Pennington* doctrine protects some, but not all, of Apple's conduct. (*See* March 24 Order at 5:14-10:9.) Luxpro did not file a motion for leave to file a motion for reconsideration, and therefore its request is procedurally improper. *See* N.D. Civ. L.R. 7-9(a).

Luxpro argues that the Court's ruling was "clearly erroneous" and that its ruling was "manifestly unjust." (Opp. Br. at 7 (citing *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)). Under Local Rule 7-9(b), a party may seek leave to reconsider a previous ruling by showing, *inter alia*, that the Court manifestly failed "to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." However, "[n]o motion for leave to file a motion for reconsideration may repeat any oral or written argument," previously raised by the party who seeks reconsideration. N.D. Civ. L.R. 7-9(c). The Court has considered Luxpro's arguments in support of its request to revisit this issue. Luxpro repeats arguments previously presented to, considered by, and rejected by the Court.

Accordingly, Luxpro's request also is without substantive merit, and the Court DENIES the request.

**B.   The Court Grants, in Part, and Denies, in Part Apple's Motion to Dismiss.**

   **1.   Applicable Legal Standard.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint

2

are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990)

**2.     Intentional Interference with Prospective Economic Advantage.**

To state a claim for intentional interference with prospective economic advantage, a plaintiff must show: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff, which is proximately caused by the acts of the defendant. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003).

In its March 24 Order, the Court found that Luxpro had not stated a claim for intentional interference with prospective economic advantage with respect to twenty specific entities, on the basis that Luxpro: (1) failed to allege facts to show that Apple engaged in any independently wrongful conduct; or (2) that Apple's alleged interference actually disrupted the relationships.[1] (March 24 Order at 13:1-14:8.)

In its TAC, Luxpro alleges that, as to these entities, Apple allegedly disparaged Luxpro's products and threatened that if these entities did business with Luxpro, Apple would not permit them to purchase Apple products. It further alleges that, thereafter, these entities stopped doing business with Luxpro. (*See, e.g.,* TAC ¶¶ 53, 55-59, 66-68.) Luxpro also alleges that "purchasing agents" from Tounsen and Fatech, two companies with whom Luxpro did business, "confirmed to Luxpro that Apple had approached *all* of Luxpro's distributors and retailers, including those listed in paragraphs 30-34, 48, and 52-54, with a threatened boycott (if these distributors and retailers sold Luxpro products, then they could not sell Apple products) and disparaged Luxpro's business and products." (*Id.* ¶ 56 (emphasis in original).)

Apple argues that these allegations are insufficient to state a claim, because Luxpro does not allege any information about the identity of the purchasing agents or where and when such conversations took place. However, the heightened pleading standard of Rule 9 is not implicated by those allegations. Apple also argues that the allegations are insufficient, because they are based on hearsay statements. The Court does not find the cases on which Apple relies to be persuasive. For example, in *In re Evangelos J. Karagianis (FIA Card Services, N.A.)*, 2009 Bankr. LEXIS 3844 (Bankr. D.N.H. Dec. 4, 2009), the court did not hold that hearsay allegations could never be considered in support of a motion to dismiss. Rather, it found that plaintiff had, in large part, incorporated allegations from other complaints in other lawsuits, which it noted were "at best hearsay, or the plaintiff's opinion about other suits." *Id.*, 2009 Bankr. LEXIS 3844, at *15.

---

[1] Those entities are Elecom, Co. Ltd, Japan Airlines, Nikko VC, Seitec Corporation, Beijing Big Boss, Longda Tech., AboCom Systems, Golden View, Co., Ltd., Gajah International, DataPool Systems, Best Buy, Radioshack, Wal-Mart, Starbucks Corporation, Circuit City Stores, Inc., Bruder Products, Ltd., Fatech Co., Dai-Daichi Denki, TKEC 3C, and ET-Mall TV Shopping.

4

In *Newman v. Gonzales*, 2009 U.S. Dist. LEXIS 8527 (E.D. Cal. Jan. 28, 2009), the court dismissed a complaint containing evidentiary material, because the plaintiff failed to comply with Rule 8's requirement to set forth a short, plain statement of relief. Similarly, the Ninth Circuit affirmed a district court's decision to dismiss for failure to satisfy the short, plain statement requirement in *Carrigan v. California State Legislature,* 263 F.2d 560, 564 (9th Cir. 1959). The Court also does not find *Bajor v. Wal-Mart Corp.*, 2010 U.S. Dist. LEXIS 12993, at *1-2 (E.D. Mich. Feb. 16, 2010) to be instructive, because in that case the court was resolving a motion to strike made in connection with a motion for summary judgment, rather than addressing a motion to dismiss. Indeed, Apple's argument on this point is better addressed by way of a motion for summary judgment.

With the exception of Circuit City, with whom Luxpro still fails to allege that it had an existing economic relationship, the Court concludes that Luxpro has cured the deficiencies identified in the Court's March 24 Order. Accordingly, the Court DENIES Apple's motion to dismiss this claim, although Luxpro shall not proceed with this claim as to Circuit City.

### 3. Intentional Interference with Contractual Relations.

To state a claim for intentional interference with contractual relations, a plaintiff must show: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) the defendant's intentional acts designed to induce breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

In its March 24 Order, the Court found that Luxpro had failed to state a claim as to ten of eleven entities identified in the SAC, because Luxpro had not alleged any facts to show that Apple knew of the relationships and intentionally and wrongfully interfered with those relationships.[2] As set forth above, in its TAC, Luxpro alleges that purchasing agents from

---

[2] Those ten entities were Beijing Huaqi Informational Digital Technology Co., Ltd., Beijing Qian Kun Time Digital Technology Co., Ltd., TCL Digital Electronics, Victor Japan, Ltd., Laos Co. Ltd., N.A.K.S. Asia Limited, Funai Europe UK Representative, Keller Trading AB, Boardman Inc., and Twister Sound Pty Ltd.

5

Tounsen and Fatech "confirmed to Luxpro that Apple approached *all* of Luxpro's distributors and retailers," including the ten entities as to which the Court previously dismissed this claim. (TAC ¶¶ 30, 75.) Luxpro also alleges that the entities with whom it had existing contracts terminated those contracts because of Apple's alleged defamatory statements and because of Apple's threats to withhold its products if these entities purchased Luxpro's products. (*See, e.g.,* TAC ¶¶ 49, 52, 75.)

Apple raises the same arguments it raised in connection with its motion to dismiss the claims for intentional interference with prospective economic advantage. For the reasons set forth above, the Court finds those arguments to be without merit. Accordingly, the Court DENIES Apple's motion to dismiss the claim for intentional interference with contractual relations.

### 4. Violation of Section 43(a) of the Lanham Act.

Under the Lanham Act, a party shall be civilly liable for making false or misleading representations in "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). A prima facie case under the Lanham Act requires that the plaintiff show, *inter alia*, that the defendant made a false statement about the plaintiff's product "in commercial advertisement or promotion." *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008) (internal citation omitted) (emphasis added). "Commercial advertising or promotion" is defined as:

> (1) commercial speech; (2) by the defendant who is in commercial competition with the plaintiff; (3) *for the purpose of influencing consumers to buy defendant's goods or services.* While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Id.* at 1054 (internal citation omitted) (emphasis added). Only misrepresentations that are made in the promotion or marketing of a defendant's product are actionable under the Lanham Act. *See Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003) (holding that statements that were not made in promotion or marketing of a product were not actionable as commercial advertising or promotion).

6

In its March 24 Order, the Court concluded that Luxpro had not alleged facts to show that Apple's demand letters constituted "commercial advertising or promotion," because there were no facts to show that the letters were designed to influence Luxpro's customers to buy Apple's goods or services. *See Zinus Inc. v. Simmons Bedding Co.*, 2007 WL 4287391, at *5 (N.D. Cal. Dec. 6, 2007) (concluding that although cease-and-desist letters might have influenced customers to refrain from purchasing plaintiff's product, that alone was not sufficient to state a claim for false advertising under the Lanham Act); *see also*, *Futuristic Fences, Inc. v. Illusion Fence Corp.*, 558 F. Supp. 2d 1270, 1281 (S.D. Fla. 2008) (citing *Avery Dennison Corp. v. Acco Brands, Inc*., 2000 WL 986995, at *8 (C.D. Cal. Feb. 22, 2000) (concluding that cease-and-desist letters "were sent by [the d]efendants' attorney, not as a marketing and sales tool, but in an attempt to protect [the defendants'] legal rights").

In its TAC, Luxpro alleges that Apple's alleged threats and its statements that Luxpro's products were "cheap knockoffs" and "illegal copies," "were made to influence" Luxpro's customers "to purchase Apple's products." (TAC ¶ 41; *see also id.* ¶¶ 56, 78.) Apple argues that the new allegations regarding Apple's purpose for making such statements are bare legal conclusions, couched as facts, and are insufficient to state a claim. The Court disagrees, and it concludes that these allegations are sufficient to *allege* that Apple's statements, whether made orally or in writing, qualify as commercial advertising or promotion.

Prior to the hearing, the Court *sua sponte* raised the issue of whether or not the statements supporting Luxpro's Lanham Act claims were actionable, which would also impact Luxpro's claims for trade libel. *See, e.g., Coastal Abstract Serv., Inc. v. First Amer. Title Ins. Co.*, 173 F.3d 725, 730-32 (9th Cir. 1999) (statements of opinion generally are not actionable). In the *Coastal Abstract* case, the plaintiff was engaged as an escrow agent by Shearson Lehman Hutton Mortgage Corp. ("Shearson") in connection with a home loan refinancing program. *Id.* at 729. Shearson engaged the defendant to assist with the program as well. After Shearson discontinued its relationship with plaintiff, plaintiff sued the defendant for, *inter alia*, defamation and false advertising under the Lanham Act. These claims were based on

1    statements made to Shearson that the plaintiff was "too small" to handle Shearson's business
2    and that plaintiff was not properly licensed in California as an escrow agent. *Id.* at 729-30.[3]

3    The court concluded that these statements were not actionable. First, it noted that to
4    establish liability under the Lanham Act, a plaintiff must show that the defendant made a "'false
5    or misleading *representation of fact*.'" *Id.* at 730 (quoting 15 U.S.C. § 1125(a)(1)) (emphasis in
6    original). The court also noted that under California law, defamation "requires that the
7    offending statement 'expressly or impliedly assert a fact that is susceptible to being proved
8    false,' and must be able reasonably to be 'interpreted as stating actual facts.'" *Id.* (quoting
9    *Weller v. American Broadcasting Companies*, 232 Cal. App. 3d 911, 1001 (1991)). Applying
10   these rules of law, the court found that the statement that plaintiff was "too small" to handle
11   Shearson's business was "mere puffery" and was "not a specific and measurable claim, capable
12   of being proved false or being reasonably interpreted as a statement of objective fact." *Id.* at
13   731. Thus, as a matter of law, that statement could not support a claim under the Lanham Act
14   or for defamation. *Id.*

15   If Luxpro's claims were limited to allegations that Apple called its products "cheap," the
16   Court could easily find as a matter of law that such a statement would not be not actionable.
17   However, the crux of Luxpro's claims is that Apple has stated that Luxpro's products are
18   "knockoffs," albeit cheap ones," and "illegal copies." These statements are similar to the
19   statements in the *Coastal Abstract* case that the plaintiff was not properly licensed as an escrow
20   agent. The *Coastal Abstract* court noted that "[a]bsent a clear and unambiguous ruling from a
21   court or agency of competent jurisdiction, statements by laypersons that purport to interpret the
22   meaning of a statute or regulation are opinion statements, and not statements of fact." *Id.* at
23   731. Because the defendant's statement regarding plaintiff's lack of a license was an unsettled
24   matter of law, the court found that the defendant's statement that the statute applied to
25   plaintiff's activities was a matter of opinion and, therefore, not actionable under either the
26   Lanham Act or California defamation law. *Id.*

---

28   [3] Plaintiff's claims were also based on a statement by the defendant that the plaintiff was not paying its bills, which the court concluded was actionable because it was "clearly one of fact, able to be proven true or false." *Id.* at 732

8

Apple argues that this Court should find the allegations regarding "cheap knockoffs," and "illegal copies" to be akin to the licensure statement in *Coastal Abstract, i.e.* that a fair reading of the allegations in the TAC, is that these statements imply that Luxpro's products infringe Apple's trade dress. According to Apple, such a statement is "opinion until or unless a Court rules on that question." (*See* Docket No. 199, Transcript of Hearing ("Tr.") at 8:24-10:4, 11:24-13:7.) Luxpro argues that the statements are not opinion. In the alternative, it argues that even if the statements are construed as opinions, the "opinion is based on a number of unstated defamatory facts...." (*Id.* at 7:14-8:6.)

Luxpro relies on various unpublished and out-of-circuit authorities to support this argument, primarily *Alexander Binzel Corp. v. Nu-Tecsys Corp.*, 2000 WL 310304 (N.D. Ill. Mar. 24, 2000). (*See* Tr. 6:6-24).[4] In that case, the court denied a motion for new trial and rejected the plaintiff's argument that its statements that the defendant's products were "counterfeit," which were the subject of a counterclaim, were opinion and were not capable of being proved false. *Alexander Binzel*, 2000 WL 31034 at *5-6. The court specifically noted that the letter containing the statement "exhibited an entirely factual tone, and the counterfeit statement is embedded within that context." *Id.*, 2000 WL 31034, at *6. It therefore concluded that a reasoanble juror could have found the statement literally false. *Id.,* 2000 WL 31034, at *5.

In light of the procedural posture of the case and in light of the fact that the TAC does not contain complete copies of the letters Apple allegedly sent to Luxpro's customers, at this time the Court cannot say as a matter of law that the statements supporting this claim are not actionable. *Cf. Overstock.com , Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 701 (2007) (ruling on special motion to strike, and noting that "false statement of fact, whether

---

[4] Luxpro also relies on *PennPac Int'l, Inc. v. Rotonics Mfg., Inc.*, 2001 WL 569264 (E.D. Pa. May 25, 2001) and *Healthpoint, Ltd. v. Ethex Corp.*, 2004 WL 2359420 (W.D. Tex. July 14, 2004) for the proposition that a statement of opinion may be defamatory if it implies that it is based on unstated facts. In each of those cases, the issue of whether the statements were or were not actionable was decided on a motion for summary judgment. *See, e.g., PennPac*, 2001 WL 5699264, at *10-11; *Healthpoint*, 2004 WL 2359420, at *11-12 (distinguishing *Coastal Abstract* on the basis that although uninterpreted state laws might be relevant to case, those laws would not determine whether the statements at issue were false and misleading).

9

1  expressly stated or implied from an expression of opinion is actionable," and that "key is not
2  parsing whether a published statement is fact or opinion, but whether a reasonable fact finder
3  could conclude the published statement declares or implies a provably false assertion of fact")
4  (internal quotations and citations omitted).

Accordingly, the Court DENIES Apple's motion to dismiss the Lanham Act claim, although Apple may renew these arguments in a motion for summary judgment.

### 5. Section 17200.

Apple argues that, as a matter of law, Luxpro cannot state a claim under Section 17200 because Luxpro fails to allege facts showing it is entitled to restitution or injunctive relief.

#### a. Restitution.

It is well-established that a plaintiff cannot recover damages pursuant to a Section 17200 claim. *Korea Supply*, 29 Cal. 4th at 1144. Rather, a plaintiff bringing such a claim is limited to injunctive relief and restitution. *Id*. Throughout its TAC, and in its opposition, Luxpro makes clear that it seeks disgorgement of Apple's profits, which it contends were obtained unlawfully. In *Korea Supply*, the plaintiff, as Luxpro does here, brought claims for violations of Section 17200 and intentional interference with prospective economic advantage. The plaintiff alleged that the defendant used bribes and other favors to cause a company that the plaintiff represented to lose a contract with the Republic of Korea. When the Republic of Korea awarded the contract to the defendant, the plaintiff lost the opportunity to obtain a commission it would have earned if the Republic of Korea had awarded the contract to the plaintiff's client. *Korea Supply*, 29 Cal. 4th at 1140. The plaintiff then sought to obtain the profits the defendant gained from the contract with the Republic of Korea.

The California Supreme Court concluded plaintiff could not state a claim under Section 17200, and, in doing so, explained the meaning of the terms "restitution" and "disgorgement." *Korea Supply*, 29 Cal. 4th at 1140. An order for "restitution" is an order that compels a "defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person." *Id*. at 1144-45 (quoting *Kraus v. Trinity*

10

1 *Management Services, Inc.*, 23 Cal. 4th 116, 126-27 (2000)); *see also Cortez v. Purolater Air Filtration Products Co.*, 23 Cal. 4th 163, 177 (2000) (goal of restitution is to restore plaintiff to *status quo ante*).

In contrast, "disgorgement" is a broader remedy. "Disgorgement 'may include a restitutionary element, but it is not so limited.'" *Korea Supply*, 29 Cal. 4th at 1145 (quoting *Kraus*, 23 Cal. 4th at 127). An order for "disgorgement" is defined as an order: (1) "compel[ling] a defendant to surrender all money obtained through an unfair business practice even though not all is to be restored to the person from whom it was obtained or those claiming under those persons," or (2) compelling a defendant "to surrender ... all profits earned as a result of an unfair business practice regardless of whether those profits represent money taken directly from persons who were victims of the unfair practice." *Id*. at 1145 (quoting *Kraus*, 23 Cal. 4th at 127).

The Court then clarified that disgorgement of profits is allowed in Section 17200 claims only to the extent it constitutes restitution, *i.e.*, profits unfairly obtained to the extent they represent money in which the plaintiff has an ownership interest. *Id*. at 1145, 1148; *see also Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 699 (2006) (a plaintiff can seek money or property as restitution where such "money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession") (citation omitted).

Applying these principles to the facts before it, the *Korea Supply* court noted that "it [was] clear that plaintiff [was] not seeking the return of money or property that was once in its possession. [The plaintiff had] not given any money to [the defendant]; instead it was from the Republic of Korea that [the defendant] received its profits." 29 Cal. 4th at 1149. In light of these facts, the court found that "[a]ny award that plaintiff would recover from defendants would not be restitutionary as it would not replace any money or property that defendants took directly from plaintiff." *Id*. Therefore, because the plaintiff's requested remedy was nonrestitutionary, it was not entitled to disgorgement of the defendant's profits under Section 17200. *Id*. at 1140, 1149.

The facts underlying Luxpro's Section 17200 claim are the same facts that support each of Luxpro's other claims for relief, including its claims for intentional interference with prospective economic advantage.  Luxpro contends it had a "vested interest" in the revenues and profits that it would have earned from its distributorship agreements.  A "vested interest is one that is unconditional, absolute, and not contingent." *Pegasus Satellite Television, Inc. v. DirectTV, Inc.*, 318 F. Supp. 2d 968, 979 (C.D. Cal. 2004) (internal quotations and citations omitted).  Like the plaintiff in the *Korea Supply* case, Luxpro alleges facts that show it lost business opportunities and potential future revenues with entities with whom it did not have a contractual relationship.  To the extent Luxpro suggests that Apple should be required to disgorge any profits it earned as a result of this conduct, that is exactly the type of non-restitutionary disgorgement precluded under *Korea Supply*.  *Korea Supply*, 29 Cal. 4th at 1140, 1149; *see also MAI Sys. Corp. v. UIPS*, 856 F. Supp. 538, 542 (N.D. Cal. 1994) ("[c]ompensation for a lost business opportunity is a measure of damages and not restitution to the alleged victims").

However, Luxpro also alleges that it had contracts to distribute a certain number of MP3 players with the eleven entities identified in paragraphs 30a-30k of the TAC.  Luxpro has not set forth the specific terms of these contracts, and, as this case progresses, discovery may show that the terms of these alleged contracts show that Luxpro's interest in profits and/or revenues from these contracts was not "vested."  Similarly, Luxpro ultimately may not be able to prove that money or property that should, in good conscience, belong to can be traced to particular funds or property in the Apple's possession.  However, at this stage of the proceedings, the Court cannot say as a matter of law that Luxpro's interest in profits from those eleven entities was contingent or conditional.  Therefore, to the extent Luxpro's Section 17200 claim is premised on conduct relating to those specific entities, Luxpro has alleged facts sufficient to state a claim for relief under Section 17200.

        **b.**    **Injunctive Relief.**

Apple also moves to dismiss the Section 17200 claim on the basis that Luxpro does not allege that Apple's conduct is ongoing, or likely to recur.  Thus, Apple argues that Luxpro

cannot show it is entitled to injunctive relief. Under Section 17200, "a plaintiff cannot receive an injunction for past conduct unless he shows that the conduct will probably recur." *Sun Microsystems v. Microsoft Corp.*, 188 F.3d 1115, 1123 (9th Cir. 1999) (citing *People v. Toomey,* 157 Cal. App. 3d 1, 20 (1984)); *see also Madrid v. Perot Systems Corp.*, 130 Cal. App. 4th 440, 465 (2005) (citing *Toomey*).

Throughout its TAC, Luxrpo alleges that the conduct on which it premises its claims occurred between 2005 and 2007. (*See, e.g.,* TAC ¶¶ 49-51, 58-59, 62.) Luxpro also alleges that "[b]y the time Luxpro had successfully defeated Apple's abusive litigation and product disparagement strategy in the Taiwanese District Court and before the Taiwan Trade Commission, it was too late to get back into the global MP3 market, and too late to penetrate Apple's vise-grip on the United States MP3 market." (*Id.* ¶ 63; *see also id.* ¶¶ 44-45.) These allegations demonstrate that Luxpro's allegations relate to Apple's conduct in the past. However, Luxrpo has not alleged any facts showing that Apple's conduct is likely to recur. As such, Luxpro has not alleged facts showing that it is entitled to injunctive relief under Section 17200. *See, e.g., Madrid*, 130 Cal. App. 4th at 465 (affirming trial court's decision to sustain demurrer where plaintiff failed to allege facts showing that conduct was likely to recur).

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Apple's motion to dismiss, and it DENIES Luxpro's request to reconsider the ruling on the *Noerr-Pennington* doctrine. In its March 24 Order, the Court stated that it granted Luxpro one final opportunity to amend its claims and, as such, the Court shall not permit any further amendments.

**IT IS SO ORDERED.**

Dated: August 12, 2011

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE